Filed Nov. 25, 1884.

---

No. 11,617.

98 403
159 25

NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY v. WILLIAMS.

SUPREME COURT.— *Weight of Evidence.*—The Supreme Court will not disturb a verdict on the mere weight of evidence.

SAME.—*Real Estate Broker.—Contract.—Commission.—Principal and Agent.*— As to evidence sufficient to authorize the Supreme Court in affirming a judgment in favor of a real estate broker for commissions in negotiating the sale of land, see opinion.

From the Superior Court of Marion County.

*T. A. Hendricks, A. W. Hendricks, C. Baker, O. B. Hord, A. Baker* and *E. Daniels*, for appellant.

*L. Ritter, E. F. Ritter* and *B. W. Ritter*, for appellee.

NIBLACK, J.—Some time prior to the fall of 1879, the Northwestern Mutual Life Insurance Company became the

owner, by the foreclosure of a mortgage, of a farm in Marion county, consisting of about one hundred and sixty acres of land, and lying about five miles east of the city of Indianapolis, known as the "McClain Farm." At the time named, one William H. Williams was, and for several years had been, a tenant on the farm. Early in the year 1880, this farm was, in consideration of the sum of $10,000 actually paid, sold and conveyed to one Anton Schildmeyer by the company. At the time the sale was consummated, a real estate agent by the name of Arbuckle, doing business in the city of Indianapolis, was recognized by the parties as the agent who had brought them together for the occasion, and each contributed to the payment of Arbuckle a commission for his services. Afterwards Williams, claiming that he had been employed during the preceding fall to make sale of the farm, for which a commission of three per cent. was promised him, and that he had initiated the negotiations which had resulted in the sale, commenced this action against the insurance company to recover the amount he demanded as rightfully due him for his commission on the sale.

The court below at special term found that there was due Williams the sum of $300, and over a motion for a new trial challenging the sufficiency of the evidence to sustain the finding, gave him judgment for that sum. Upon an appeal to the general term the judgment at special term was affirmed.

It is still claimed that the finding was not sustained by sufficient evidence, and that constitutes the only objection urged here to the proceedings below.

Williams testified at the trial, that in the fall of 1879, about seeding time, he met one Robert Wasson, the insurance company's land agent for the State of Indiana, at the company's office in Indianapolis, and asked him about renting the farm for another year; that Wasson told him the farm was for sale, but that he might put in wheat and take the chance of making terms with the purchaser in the event

that the farm might be sold before the wheat was harvested; also, that he had better find a purchaser for the farm; that if he would find such a purchaser the company would pay him a commission of three per cent. on the proceeds of the sale; that he, Williams, thereupon agreed to try and find a purchaser, nothing being said at the time as to the price of the farm; that about two weeks after this conversation he, Williams, saw Schildmeyer and told him the farm was for sale and that he had better buy it; that Schildmeyer asked him to get the best price that could be obtained; that he, Williams, then went to the company's office in Indianapolis, and got one Charles B. Coe, the agent in charge, to write to the company for the purpose of ascertaining the lowest price in cash, telling Coe who it was that was desirous of purchasing; that Coe wrote at once as requested. This letter was shown by other testimony to have been as follows:

"Agency of the Northwestern Mutual Life Insurance Company.    Charles B. Coe, General Agent.

"INDIANAPOLIS, IND., October 7th, 1879.

"ROBERT WASSON, ESQ., MILWAUKEE—*Dear Sir*—W. H. Williams (tenant at the McClain farm) wants you to address him at Irvington, Ind., stating the lowest terms on the McClain farm, all cash, and, also, in payments. Thinks he has found a purchaser.            Yours truly,

"CHAS. B. COE."

Williams, continuing, testified that a short time after this letter was written, he received a letter from Wasson, which reads:

"Northwestern Mutual Life Insurance Company.    H. L. Palmer, President;    Matthew Kernan, Vice-President; Emory McClintock, Actuary; William Merrill, Secretary; L. McKnight, M. D., Medical Director.

"MILWAUKEE, October, 8th, 1879.

"W. H. WILLIAMS, IRVINGTON, IND.—I am in receipt of letter from C. B. Coe, Indianapolis, requesting me to write

you, giving price of McClain Farm, etc. In reply, the price is $12,000, ⅓ cash down, bal. in five (5) years, at 8 per cent. int. s. a. Party desiring to purchase can pay the balance in instalments each year, or let it run until end of five (5) years. He can also pay in amounts of $500 at any time as suits him best. Advise me. Yours, etc.,

"ROBERT WASSON."

That he, Williams, then saw Schildmeyer and told him the price as given by Wasson's letter; Schildmeyer did not like the terms, objecting to the *time* payments, and saying that he wished to pay cash, and wanted the lowest *cash* price; that a week or two afterwards he, Williams, in company with Coe, met Wasson in Indianapolis, at his hotel, and inquired of him the lowest *cash* price for the farm, telling him that Schildmeyer wanted to pay cash, and hence wanted the *cash* price; that Wasson, after commenting upon the name, and saying that it was evidently a German name, inquired why Schildmeyer did not himself come to Indianapolis; that he, Williams, told Wasson that Schildmeyer was at that time detained at home by a domestic affliction; that Wasson then requested him to get Schildmeyer to come to the company's office in Indianapolis; that afterwards, during the months of October and November, 1879, he, Williams, met Schildmeyer several times at places named, and at one of these times had a long talk with him; that after the sale to Schildmeyer he went with Coe to meet Wasson at his hotel in Indianapolis, where he asked Wasson about his commission on the sale; that Wasson then said he did not know that the purchaser was his, Williams' man; that he, Wasson, did not make the sale; that another man had made it; that he was very sorry, but expected the company had paid another man.

Wasson, who was also made a witness in the cause, admitted that he had requested Williams to find a purchaser for the farm, and that he had promised him a commission of three per cent. in the event that he succeeded in doing so. Seem-

ingly, however, to impair the force of that admission, Wasson stated that he had made near the same time, similar requests of and propositions to nearly every real estate agent then doing business in Indianapolis, as well as many other persons residing in the vicinity of the farm.

Upon some points of his testimony Williams was corroborated by other witnesses, aside from the letters set out as above, and upon other points, material to his right of recovery in the action, he was sharply antagonized, and, indeed, quite positively contradicted.

If we were permitted to weigh the evidence, as we find it in the record, we would feel constrained to declare that weight of evidence was, in some material respects, against Williams. But, under the long established practice in this court, we are only authorized to inquire whether there was evidence fairly tending to sustain the finding upon which the judgment at special term was rendered. Accepting the evidence introduced by Williams as true, as we must do when considering what that evidence, standing by itself, tended to prove, we are unable to say that, when construed in the light of the admitted facts of the case, it did not fairly tend to sustain the finding. In the first place, as has been observed, Williams swore that he named Schildmeyer to both Wasson and Coe as the person for whom he was trying to ascertain the lowest cash price for the farm and as one desirous of purchasing if the price could be made satisfactory. That was fair notice to the company that Williams was engaged in the work of finding it a purchaser, and that he would probably have a claim for commission in the event that Schildmeyer eventually became the purchaser. In the next place, the scheme of employing a great and really indefinite number of persons, in the same community, to act as agents, without any co-operation with each other, in the sale of a single farm, was, in any event, a hazardous one, as regards the amount of commissions which might have to be paid. That misunder-

standing and litigation, and the consequent payment of a double commission, should result from the promotion of such a scheme, ought not to be the cause of surprise to any experienced business man, and, especially, to the men who manage the immensely large business transacted by the insurance company which prosecutes this appeal.

We will not attempt to announce the general principles applicable to the varying phases of the class of cases to which this belongs. That has been well done in some of the decided cases which we herewith cite : *Lane* v. *Albright*, 49 Ind. 275 ; *Love* v. *Miller*, 53 Ind. 294 (21 Am. R. 192) ; *Reyman* v. *Mosher*, 71 Ind. 596 ; *Vinton* v. *Baldwin*, 88 Ind. 104 (45 Am. R. 447) ; *Lincoln* v. *McClatchie*, 36 Conn. 136 ; *Stewart* v. *Mather*, 32 Wis. 344 ; *Armstrong* v. *Wann*, 29 Minn. 126 ; *Ward* v. *Fletcher*, 124 Mass. 224 ; *Vreeland* v. *Vetterlein*, 33 N. J. 247 ; *McClave* v. *Paine*, 49 N. Y. 561 (10 Am. R. 431) ; *Wylie* v. *Marine Nat'l Bank*, 61 N. Y. 415 ; *White* v. *Twitchings*, 26 Hun, 503 ; *McArthur* v. *Slauson*, 53 Wis. 41 ; *Murray* v. *Curry*, 7 Car. & Payne, 771 ; *Burnett* v. *Bouch*, 9 Car. & Payne, 362 ; *Mansell* v. *Clements*, 8 Moak Eng. R. 449 ; *Lloyd* v. *Matthews*, 51 N. Y. 124 ; *Jones* v. *Adler*, 34 Md. 440 ; *Bornstein* v. *Lans*, 104 Mass. 214 ; *Gillett* v. *Corum*, 7 Kan. 156 ; *Bell* v. *Kaiser*, 50 Mo. 150 ; *Tyler* v. *Parr*, 52 Mo. 249 ; *Doty* v. *Miller*, 43 Barb. 529 ; *Wakefield* v. *Estate of Merrick*, 38 Vt. 82 ; *Barnard* v. *Monnot*, 3 Keyes, 203 ; *Earp* v. *Cummins*, 54 Pa. St. 394 ; *Kimberly* v. *Henderson*, 29 Md. 512.

As may be readily inferred from what we have already said, this case is not in all respects a satisfactory one upon the evidence, but we do not feel justified in disturbing the finding for want of sufficient evidence to sustain it.

The judgment at general term is affirmed, with costs.

Filed Nov. 24, 1884.