The Evansville and Terre Haute Railroad Company *v.* Taft.

*No.* 284.

## The Evansville and Terre Haute Railroad Company *v.* Taft.

Special Verdict.—*Formal Conclusion.*—*Omission of.*—A special verdict is not vitiated by the want of the usual formal conclusion.

Same.—*Negligence.*—Negligence may be pleaded in general terms, without stating the particular facts constituting it. In a special verdict, however, the particular facts proved under such a pleading should be set out.

Practice.—*Venire de Novo.*—The fact that a special verdict contains no finding upon particular matters of fact in issue is not sufficient ground for a *venire de novo*. To require a *venire de novo* the verdict must be so defective that a judgment can not be rendered on it.

Same.—In examining the verdict under a motion for a *venire de novo*, mere conclusions of law, mere evidence and findings outside of the issues will be disregarded; and if, when stripped of such improper matters, the verdict is sufficient to sustain a judgment for either party, a *venire de novo* will not be granted.

From the Sullivan Circuit Court.

*J. E. Iglehart, E. Taylor, J. T. Hays* and *H. J. Hays,* for appellant.

*J. T. Beasley* and *A. B. Williams,* for appellee.

Black, J.—This was an action to recover damages for the destruction of the appellee's threshing machine by the locomotive and train of the appellant.

The complaint was in three paragraphs, the first and third being for wilful injury, the second for negligent injury.

A special verdict was returned, and the appellant's motion for a *venire de novo* and its motion for a new trial having been overruled, judgment for three hundred dollars was rendered for the appellee.

In the special verdict it was found that on the 19th of August, 1889, the appellee was the owner of a threshing machine of the value of $300, which on that day was struck by a locomotive engine and train of cars on appellant's track, and was entirely destroyed, which locomotive and train of

cars belonged to and were operated by the appellant; that on said day said machine was in charge of one John H. Bolinger, who was acting for the appellee; that on said day, in the evening, shortly after dark, it being a clear, starlight evening, and light enough for ordinary travel, said Bolinger was taking said machine, and an engine and water-tank used in connection therewith, to the farm of one Charles W. Lovelace, for the purpose of threshing grain on the following day; that the usual and ordinary way in going to said farm was over "a private farm crossing, across the appellant's track, leading to said farm from a public highway running along the east side of the right of way, and parallel with the appellant's road," from the town of Shelburn, south, to the town of Currysville, on the north, both in Sullivan county, Indiana, said towns being one-half mile apart; that there was no fence between said public highway and the appellant's railroad track between said towns; that said "farm crossing" was not at a public highway or street, but was used for the purposes of travel as ordinary public highways are used; that at said time, in going to said farm, said Bolinger attempted to take said machine across appellant's track over said "farm crossing;" that said machine was then drawn by a team of horses, each three years of age, well broken, which team had been used to said machine for three weeks prior to that time; that said "farm crossing" at that time was in bad repair, in that some of the ties of which it was constructed were rotten; that before attempting to cross with said machine, said Bolinger walked upon and over said crossing and examined it, and did not observe that it was out of repair, and did not know that it was out of repair; that after having examined said crossing, the engine used in connection with said machine was hauled safely over said crossing; that after said engine had so passed over, said Bolinger again examined said crossing, and did not discover or ascertain that it was rotten or out of repair; that thereupon, upon the direction of said Bolinger, the driver managing said machine

attempted to drive the same over said crossing, and in so doing drove along the center of said crossing until the front wheels of the trucks on which said machine was hauled had passed across the railroad track, and the hind wheels of said trucks were between the rails of the railroad track, which there runs north and south, when, the front wheels of said trucks having struck one of said rotten ties, said tie broke and gave way, and let said trucks down into the ditch running under said ties ; that in attempting to drive said machine over said crossing, the driver thereof drove in a careful manner ; that when said truck broke through said crossing as aforesaid, it thereby became impossible, for the time being, to remove said machine off said railroad track with the means then at hand ; that at a point one-half mile south of said crossing was and is the town and station of Shelburn ; that within one-fourth of a mile north of said crossing there was and is a coal station, then used by appellant for coaling its locomotive engines; that ten minutes prior to the attempt made as aforesaid to take said machine over said crossing, the locomotive engine which afterward struck said machine left its said train at said Shelburn station and went to said coal station, and took coal and passed back over said crossing to its train, which fact the parties in charge of said machine then knew ; that at the time the attempt was made to take said machine over said crossing, said locomotive engine and its train of cars were standing at said Shelburn station, "which fact the parties in charge of said machine then saw and knew; " that said train was a freight train of twenty-nine cars going north, and had the headlight of the engine burning, which headlight was dirty to an extent that interfered with its use, but those in charge of said machine saw the same when at said station ; that the engine connected with said separator was taken over said crossing while said locomotive engine and train were standing at said station and before the same had started north therefrom ; that just at the time the driver in charge of the machine started to drive the same over said

crossing, said locomotive and train, being then one-half mile south from said crossing, started north from said station, which fact those in charge of said machine then knew; that as soon as said machine broke through said crossing, those in charge of said machine attempted to extricate and remove the same with said team, and by lifting and prying in aid thereof, but could not remove said machine with any means at their command; that as soon as they ascertained that they could not remove the same, one Ed Snyder was sent down said railroad track to signal said train; that said Snyder thereupon started toward said train, going in a run down the center of the railroad track, waving his hand and hat across said railroad track, and hallooing as he ran; that said Snyder ran south along said railroad track, waving and hallooing as aforesaid, a distance of 630 feet to a railroad bridge which is forty-eight feet long, when the engineer in charge of said locomotive engine sounded the whistle for brakes, said engine at that time being one hundred yards south of said railroad bridge; that said train was then running at a speed of ten miles per hour; that immediately upon the sounding of said whistle for brakes, the drive brake was applied to said locomotive engine by the engineer, and the caboose brake was applied to said train by the conductor; that after crossing said bridge, and before striking said machine, the engineer and fireman each jumped from said engine; that said engine and the train, after running over said machine, came to a stop just as the caboose of said train reached the point of said crossing; that the track where said train was running from the bridge north was a little down grade; that the width of the trucks of said machine was seventy-three and one-quarter inches, and the width of the tread of the engine connected therewith was sixty-four inches, and the same as that of the tread of ordinary road wagons, and said crossing was eight feet wide; that said railroad track was on a straight line from said crossing, and was nearly level to said Shelburn station, one-half mile

south; that when said Snyder started from said crossing down said railroad track, and commenced to signal said train, he was in plain view of said train, and the engineer and fireman in charge thereof, and was seen by said engineer at a distance of about ten hundred feet south from said crossing; that said train could have been stopped before reaching said crossing, and the destruction of the appellee's machine thereby avoided, if the engineer and persons in charge of said train had made a reasonable effort so to do as soon as said Snyder was seen making said signals by said engineer; and said train could have been stopped before reaching said crossing, and the destruction of appellee's machine thereby avoided, if the engineer and persons in charge of said train had made reasonable effort so to do after said machine standing across said track was seen or might by the use of ordinary care have been seen; that said machine was painted red, and the paint on the sides of said machine was clean; that the only brakes applied by appellant's agents in attempting to stop said train were the brakes applied by the engineer and the caboose brakes applied by the conductor; that there were two brakemen on said train, composing a part of the crew in charge of said train; that the same engineer who ran his train into said machine ran his engine over said crossing in going to get coal a few minutes before, and said crossing was clear; " that the plaintiff's machine was destroyed by the defendant on account of the negligence of the defendant's agents and employees in charge of said train in the management and operation thereof, and without fault or negligence on the part of the plaintiff. Upon the foregoing facts, if the law is with the plaintiff, we find for the plaintiff in the sum of $300. That those in charge of the threshing machine at the time of its destruction had no lantern or light, and the destruction of the machine by defendant was neither wilfully nor purposely done.

" JOHN HIGBEE, Foreman.

" If, upon the foregoing facts, the law is with the defendant, we find for the defendant.

"JOHN HIGBEE, Foreman."

One ground assigned in the motion for a *venire de novo* is, " that the verdict is imperfect, in this, that after finding the facts upon which it calls for the application of the law for the plaintiff, it makes the further finding of fact before asking for the conclusion of law for the defendant, to wit," etc.

We do not regard this as a fatal defect in the verdict. It is an irregularity in form which the court, looking to the facts found, should disregard in the rendition of judgment. The result of a trial can not be overthrown because of such an inadvertence or technical error. A special verdict is not vitiated by the want of the usual formal conclusion. *Louisville, etc., R. W. Co.* v. *Lucas,* 119 Ind. 583.

Another objection presented by the motion is, that there is no finding upon certain matters of fact alleged in the complaint and denied by the answer.

If a special verdict contains no finding upon particular matters of fact in issue, this is not sufficient ground for a *venire de novo.* *Wilson* v. *Hamilton,* 75 Ind. 71 ; *Louisville, etc., R. W. Co.* v. *Buck,* 116 Ind. 566 ; *Louisville, etc., R. W. Co.* v. *Hart,* 119 Ind. 273 ; *Citizens Bank* v. *Bolen,* 121 Ind. 301.

The other grounds assigned in the motion for a *venire de novo* are, that certain designated parts of the verdict are not findings of facts, but are conclusions of law; that certain designated findings are not within the issues, and that the findings contain the evidence, and not the facts established by the evidence.

To require a *venire de novo* the verdict must be so defective that a judgment can not be rendered on it. *Henderson* v. *Dickey,* 76 Ind. 264.

The question in this court in reviewing the action of the trial court in overruling a motion for a *venire de novo,* is not whether the verdict authorized the particular judgment ren-

dered. If it be not so defective that a judgment could not properly be rendered for either party upon it, such action of the court will not be disturbed.

In examining the verdict under a motion for a *venire de novo,* mere conclusions of law, mere evidence and findings outside of the issues will be disregarded ; and if, when stripped of such improper matters, the verdict is sufficient to sustain a judgment for either party, a *venire de novo* will not be granted. *Indianapolis, etc., R. W. Co.* v. *Bush,* 101 Ind. 582; *Conner* v. *Citizens Street R. W. Co.,* 105 Ind. 62; *Pittsburgh, etc., R. W. Co.* v. *Adams,* 105 Ind. 151 ; *Louisville, etc., R. W. Co.* v. *Frawley,* 110 Ind. 18; *Indiana, etc., R. W. Co.* v. *Finnell,* 116 Ind. 414 ; *Louisville, etc., R. W. Co.* v. *Green,* 120 Ind. 367 ; *Lake Shore, etc., R. W. Co.* v. *Stupak,* 123 Ind. 210 ; *Louisville, etc., R. W. Co.* v. *Graham,* 124 Ind. 89.

The appellant has not indicated any particular statement in the verdict as constituting mere evidence, and not matters of fact.

It is insisted on behalf of the appellant that the following findings are not within the issues :

" 1. Which headlight was dirty to an extent that interfered with its use.

" 2. That there were two brakemen on said train, composing a part of the crew."

The second paragraph of the complaint contained an allegation that the appellant, by its agents, servants and employees, so carelessly and negligently managed, run and operated said locomotive and train of cars that the same ran into, etc.

It is well established, and has been so often decided as not to need the citation of authorities, that negligence may be pleaded in general terms, without stating the particular facts constituting it. In a special verdict, however, the particular facts proved under such a pleading should be set out. The two findings thus objected to, taken in connection with

the other findings, were pertinent to the issue, and they need not be disregarded in considering the question of the sufficiency of the verdict to support a judgment.

The verdict contained conclusions of law, but when stripped of all such conclusions, still the verdict was not so defective that no judgment could be rendered upon it.

It is contended by the appellant that the verdict was not sustained by sufficient evidence.

We have examined the evidence, and we are unable to decide that it does not support the special verdict.

The judgment is affirmed.

Filed Sept. 16, 1891.