Clifford *et al. v.* Meyer *et al.*

Filed May 10, 1893.

———◆———

### No. 605.

### CLIFFORD ET AL. *v.* MEYER ET AL.

JUSTICE OF THE PEACE.—*Pleading.*—*Sufficiency of Complaint.*—In actions before justices of the peace, the complaint is sufficient if it apprises the adverse party of the nature of the demand, and will operate as a bar to another action for the same thing.

SALE.—*Real Estate.*—*Broker.*—*Finding Purchaser.* — *Sale Consummated by Another Agent.*—*Broker's Commission.*—Where a person puts property in the hands of a real estate broker for sale at a certain price, and informs the broker that he will consider an offer of a less price, and that he need not hesitate to refer parties making inquiry about the property to the owner, and that he would pay him his commission if he found a purchaser for the property; and the broker advertises the property for sale at his own expense, and in response to such advertisement, a party makes inquiry of the broker about the property, and is shown the property by the broker, is told the price, and is asked to make a bid, and the broker, upon inquiry being made, gives the party the name of the owner; and the party in seeking the owner at his office finds another real

Clifford *et al. v.* Meyer *et al.*

estate broker in whose hands the property had also been put for sale, who negotiates a sale of said property to said party, the broker to whose advertisement the purchaser responded is entitled to his commission, he being the procuring cause of the sale in finding a purchaser. It can be of no consequence affecting the commission, that the sale was consummated by another agent.

SAME.—*Broker.—Commission.—Action for.—Demand not Necessary.—Notice to Owner of Purchaser Found.*—In an action for commission in such a transaction, it was not necessary to make a demand before suit was brought, neither was it necessary that the broker who had found the purchaser should have notified the owner of the property before he had consummated the sale through another agent. In procuring a purchaser, the broker had done all he agreed to do.

TENANTS IN COMMON.—*Joint Obligation.—How Created.*—Tenants in common may bind themselves jointly in any financial transaction concerning their common property.

From the Marion Superior Court.

*V. G. Clifford* and *W. F. Browder*, for appellants.

*M. Moores*, for appellees.

REINHARD, C. J.—The appellees, who are real estate agents in the city of Indianapolis, instituted this action against the appellants before a justice of the peace to recover a commission for procuring a purchaser for certain real estate of the appellants. The cause was appealed to the Superior Court where, at special term, there was a trial and special finding by the court resulting in a judgment in favor of appellees for $73. The first assignment of error, at general term, was the insufficiency of the complaint to state a good cause of action. The complaint is sufficient to withstand the attack thus made upon it. It avers that the appellants were the owners of the real estate for the sale of which the commission is claimed; that the appellees were real estate brokers in the city of Indianapolis, where the said real estate was situated, and that appellants about July 1, 1889, placed said real estate in the hands of appellees for sale; that appellees duly advertised the same for sale by notices published in the daily newspapers of said city; that thereafter, and in response to said advertise-

ments, one Roxanna Robertson, wife of William Robertson, called upon the appellees and requested to be shown said property, and to be told the price of the same; that appellees took said Roxanna Robinson to said property, and showed it to her and stated the price at which it was for sale, and at her request gave her the name of the appellant Vincent G. Clifford, one of the owners of said real estate; and that afterwards, to wit, on the 30th day of October, 1889, said Roxanna purchased said property from the appellants for the sum of $2,100, the said property being conveyed by the appellants to said William and Roxanna Robertson. Appellees aver that they are entitled to a commission of $73. for finding a purchaser for said property, as aforesaid, but that said appellants have not paid them anything whatever for their services. Wherefore they demand judgment.

In actions commenced before justices of the peace, if the complaint contain sufficient substance to apprise the adverse party of the nature of the demand, and to bar another action for the same thing, it is sufficient, even on demurrer. *Milhollin* v. *Fuller*, 1 Ind. App. 58; *Watson* v. *Conwell*, 3 Ind. App. 518; *Smith* v. *Heller*, 119 Ind. 212; *Anderson* v. *Lipe*, 114 Ind. 464.

The complaint would be sufficient if drawn in the form of an ordinary merchant's account, thus:

MILES CLIFFORD AND VINCENT G. CLIFFORD, DR.

To Henry Meyer and William Gordon, for services rendered as real estate brokers in finding a purchaser for the sale of a house and lot, in the city of Indianapolis, between July 1, 1889, and October 30, 1889, $73.00. R. S. 1881, section 1461; *Milholland* v. *Pence*, 11 Ind. 203.

The above statement, and more, may easily be extracted from the complaint, and it, therefore, sufficiently conforms to the statutory requirement.

The only error assigned in this court is that the Superior Court, in general term, erred in affirming the judgment of the court in special term. One of the errors assigned in the Superior Court was that the court in special term erred in its conclusions of law on the special findings of the facts.

It appears, from the facts found specially, that on July 1, 1889, the appellants were the owners in fee simple, as tenants in common, of the premises described in the complaint, and the appellees were associated together in business as real estate brokers in the city of Indianapolis, Indiana; that on or about said day the appellant Vincent G. Clifford (who had charge of said property, and controlled the same for himself and his co-appellant), went to the office of the appellees, and placed said property in their hands for sale. He informed the appellee Gordon that the price for which they wished to sell it was $2,300, but that they would consider a smaller offer; that the property had been in the hands of other real estate agents for sale, but as these did not appear to be doing anything with it, he and his brother wanted the appellees to take hold of it and sell it. He also told appellees that they need have no hesitancy in telling inquirers the names of the owners, as he would see that appellees were protected as to their commissions, in case they should find a purchaser. The appellants permitted the property to remain on the books of other real estate agents for sale, but the appellees supposed they had the sole charge of its sale. The appellees entered the property for sale on their books, and advertised it at their own expense in the city newspapers. Roxanna Robertson, noticing the advertisement, went to the appellees' office to make inquiries with a view to purchasing. Appellees told her the price asked, and showed her the property, and requested her to make an offer for it. She asked who owned the lot, and was told by appellee Meyer that Vincent G. Clifford was one of the owners. Meyer called upon Mrs.

Clifford *et al. v.* Meyer *et al.*

Robertson several times, for the purpose of selling her the property, but she made no offer for it directly to him, nor did she tell him that she intended to call on the owner with a view to purchasing. Miles Clifford is a resident of the State of Washington, and Vincent G. Clifford is, and then was, an attorney at law, with a law office on Washington street, in the city of Indianapolis. The office of Clifford was also occupied by William F. Crawford, who had no sign outside of the office upon the door or window, but who did some real estate and collecting business in the office, but had no connection with Clifford other than as an occupant of the same office rooms. Mrs. Robertson called at Clifford's office shortly after the conversation with Meyer in which she had been told that Clifford was one of the owners, and shortly after she had been shown the premises by the appellees, and asked to see Vincent G. Clifford. She was asked by said Clifford's law partner the nature of her business with Mr. Clifford, and stated she wished to inquire about his property on North West street, which she understood was for sale, and was informed that Mr. Clifford was not in the office, and that the property was in charge of the said Crawford, to whom she was referred by Browder, the law partner.

Crawford took her to see the lot, and she gave him a written offer of $2,100 for the property, which offer had been prepared by said Vincent G. Clifford. This offer was accepted by appellants about the middle of October, 1889, and within a day or two afterwards the appellees, for the first time, informed the said Vincent G. Clifford that Mrs. Robertson had come to their office, in response to their advertisement, to inquire about said property, and that appellees had shown it to her and told her that Vincent G. Clifford was one of the owners thereof, and the price asked, and had requested her to make an offer for the same, and claimed the commission for the sale in case it was consummated. A deed was prepared by the appel-

lants, and executed and delivered to said Roxanna Robertson, October 30, 1889, conveying the property to her for the consideration of $2,100, which was paid by her. After the delivery of said deed, and about two weeks after notice from appellees of their claim for commission for the sale to Roxanna Robertson, the appellants paid said Crawford a commission of $37 for selling said property, and it was before said deed was delivered by appellants to Mrs. Robertson, and before the payment of said sum by the appellants to Crawford that appellees notified appellants as above found, and stated and demanded their commission for services in procuring said purchaser. The appellees' services in procuring the purchaser for said lot are of the value of $73, no part of which has been paid.

From these facts the court drew the following conclusions of law:

*First.* That the appellants are liable to the appellees for the commission in the amount for which the property was sold to Roxanna Robertson.

*Second.* That the appellees are entitled to recover from the appellants the sum of $73, the amount found by the court to be the value of the commission on said sale, or the value of the services of appellees in procuring said purchaser.

*Third.* That the appellants are also liable for the costs of this action.

To each of these conclusions the appellants excepted, and, over their motion for a new trial, judgment was rendered on the findings.

It is contended by appellants' counsel in argument that in no event could there have been a joint liability of the appellants, for the reason that they were tenants in common, and that the only liability they could have incurred, concerning their real estate, is a separate one, and to the extent only of the interest each had in the premises. The position is not tenable. While it may be conceded that a

marked distinction exists in the legal status of partners and that of co-tenants, we know of no reason why such co-tenants may not bind themselves jointly in any financial transaction concerning their lands. This might be done, we apprehend, even by persons owning different tracts of land separately. If the employment was a joint obligation, of course the liability is the same, and the fact that the parties are tenants in common will not impair their right to enter into a joint contract in a matter concerning their real estate. The court had ample warrant for holding the appellants jointly liable, if liable at all.

It is next insisted that a fatal variance is shown between the complaint and the finding, from the fact that the conveyance, according to the finding, was made to Roxanna Robertson, while the complaint alleges that it was executed to Roxanna and William Robertson. The variance is not a material one. The gist of the action is for the services rendered in finding a purchaser. It makes but little difference to whom the conveyance was actually made, if the appellees were the procuring cause of the sale, or furnished the purchaser. The conveyance is but an incident to the transaction. If it were essential that the proof should conform exactly to the allegation in this particular, it being a mere technical matter, the court below would have permitted the appellees to amend their complaint so as to meet the facts proved. When that is the case, this court will deem the amendment made rather than reverse a cause upon a point like this, as no possible harm could have come to the appellants by reason of the error, if it be such.

It is further urged that the conclusions of law are " inconsistent." Counsel's statement on this point is that "the first conclusion finds defendants liable to plaintiffs 'for the commission on the amount for which the said described lot was sold;' the second conclusion finds the value of such commission to be $73."

We confess our inability to discover any inconsistency in these conclusions. The one follows logically upon the other, and it is apparent on their face that the point is not well taken.

It is further contended that the special findings show the appellees to be entitled to recover a less amount, if anything, than that fixed by the court. The contention is that, as the sale was consummated by another agent, whom, by special contract, the appellant paid $37 commission, this amount should have been deducted from the allowance of $73. While the special findings disclose that Crawford did close the sale between these parties, the consequences claimed do not necessarily follow.. As between appellees and appellants, there was no agreement that the former should do the work for any specified amount, nor does it appear that appellees adopted the agreement made by appellants with Crawford as part of their own contract with the appellants, and we are unable to see how the transaction between the appellants and Crawford can affect the dealing between the appellants and the appellees. However honestly the agent Crawford may have earned his commission, as between him and the appellants, that fact can not affect the right of the appellees to recover their commission, if they have legally earned it, nor lessen the liability of the appellants to the appellees, until it is shown that the latter have, in some way, forfeited such right of recovery, or become bound to accept a less amount by some act of estoppel or agreement on their part. The appellees' right of recovery, we think, all hinges upon the question whether or not they, in a legal sense, as between them and the appellants, were the procuring cause of the sale or furnished a purchaser. If not, they can not recover anything; but if the affirmative be the proper answer, no arrangement or dealing by the appellants with Crawford, to which the appellees were not parties, can prevent or reduce their recovery.

It is next claimed that there can be no recovery because it is shown by the special findings that the appellees did not notify the appellants that they had shown the property to Roxanna Robertson, until after the latter had contracted for it with the appellants, through their agent Crawford, and had become liable to the latter for his commission.

Under the facts of this case, we do not think notice was necessary. The appellees did all they contracted to do. They found a purchaser in Mrs. Robertson, and if the appellees did not themselves consummate the sale with her, it was because the appellants, through their other agent (Crawford), took the matter out of the hands of the appellees, reduced the price of the property, and closed the trade, thus reaping the benefit of the work of the appellees. We are reminded by appellants' counsel that Crawford was not connected with Clifford as a business partner, but that they only occupied the same office in common, and that Crawford, as real estate agent, had the property in his hands before the appellees received it. Granting this to be true, it only shows that the appellants were unfortunate in placing their property in the hands of too many agents, and the fact still remains that the appellees had done all they had agreed to do, and were prevented from consummating the transaction by the fault of the appellants.

Mrs. Robertson did not go to Mr. Crawford in response to any advertisement of the property he had made. She visited the office of appellants to inquire of the owner concerning the property, and with a view to purchasing it, because of the announcement she had seen in the newspapers, placed there by the appellees, and because the appellees had told her that Clifford was one of the owners; and she went there to find Clifford, and not Crawford. The appellants had told the appellees not to withhold the owners' names from inquirers, and that if a sale was made to

a purchaser found by the appellees, the appellants would protect them in their commission. Appellants' counsel argue that these things were not sufficiently proven. But we must take the facts as found by the court, and if there was a conflict in the testimony of witnesses, it is not in our power to reconcile it. Our duty is to adopt the finding made by the court as the correct one, if there is any evidence whatever to support it. The facts set out justified the court in finding that the appellees procured the purchaser to whom this property was sold. The appellants are estopped to deny this, when it is shown that the only reason the appellees did not close the sale with Mrs. Robertson was that the appellants, through another agent, took the business out of their hands, reduced the price, and wound up the trade with the very purchaser the appellees had sent them. See *Lane* v. *Albright*, 49 Ind. 275; *Northwestern, etc., Life Ins. Co.* v. *Williams*, 98 Ind. 403; *Pape* v. *Wright*, 116 Ind. 502.

All the broker engages to do in such a case is to make reasonable efforts to procure a purchaser. If he fails, he can recover no commission, unless there be a special contract. But if the purchaser is found through his efforts, though the sale be made by the owner himself, or another agent, the first broker is entitled to pay. *Sussdorff* v. *Schmidt*, 55 N. Y. 319.

In *Northwestern, etc., Life Ins. Co.* v. *Williams, supra,* the court said: "In the next place the scheme of employing a great and really indefinite number of persons, in the same community, to act as agents, without any co-operation with each other, in the sale of a single farm, was, in any event, a hazardous one, as regards the amount of commissions which might have to be paid. That misunderstanding and litigation, and consequent payment of a double commission, should result from the promotion of such a scheme, ought not to be the cause of surprise to any experienced business man, and, especially, to the men who manage the

Clifford *et al.* *v.* Meyer *et al.*

immensely large business transacted by the insurance company which prosecutes this appeal."

The appellants, having authorized and requested the appellee to furnish seekers after property the names of the owners, were bound to take notice that such persons, the customers of appellees, might come to such owners to make inquiries concerning the property, and they should have acted with a view to this fact. Had Mr. Clifford been present in his office when Mrs. Robertson came to see him, he would, in all fairness and justice, under the circumstances, have been required to ask her if the property had been shown her by the appellees. This obligation he assumed when he directed the appellees, in effect, to let their customers deal with him directly, and assured them that appellees would be protected in their commissions. The fact that he left an agent in his office to whom he had also entrusted the sale of this property, and that such agent closed the sale, can not change his obligation to the appellees. He should have informed his last named agent of the arrangements he had with appellees, and put such agent upon his inquiry. The facts that the agent Crawford occupied the same office with Mr. Clifford, that Crawford had no sign upon the door or windows announcing that he was a real estate broker, that Mrs. Robertson did not call at the office to see him, but that she was there to interview Clifford, are not without significance and force. So far as the facts show the only knowledge that Mrs. Robertson had of the agency of Crawford, or that he was a real estate broker at all, was that derived from Browder and Crawford in the office. This tends strongly to prove that she was induced to go there through the instrumentality of the appellees, and that she went not to see Crawford but Clifford. A previous notice to Clifford that appellees had shown the premises to Mrs. Robertson, would not have been notice to Crawford, and would, therefore, not have kept Crawford from dealing with her. The agreement

that appellants would protect appellees in their commissions, if they would give the owner's name to those making inquiries about the property, absolved the appellees from the duty of giving notice to the appellants that they had shown the property to certain ones, if any such notice was otherwise necessary. It was said by the Court of Appeals of New York in *Sussdorf* v. *Schmidt, supra:* "Nor is it indispensable that the purchaser should be introduced to the owner by the broker nor that the broker should be personally acquainted with the purchaser; but in such case it must affirmatively appear that the purchaser was induced to apply to the owner through means employed by the broker." This, as we have seen, was done here by the information which was furnished Mrs. Robertson by the appellees, that Mr. Clifford was one of the owners, and which was the only inducement, so far as the facts disclose, that prompted her to go there. Had Mrs. Robertson gone to Crawford in response to the latter's advertisement of the property, and negotiated the purchase with him, instead of going to find Clifford, and incidentally finding Crawford, by the direction of Clifford's partner, or had not Clifford directed appellees to give to inquirers the names of the owners, and agreed, in effect, to pay them their commissions, even if the sale should be made by the owners themselves, a different question might be presented.

Appellant's counsel insist that appellees had abandoned the sale when the same was closed between the parties. The special findings, however, determine otherwise, and by these we must be guided if there is any evidence to support them.

Much stress is laid by counsel upon the circumstance that Mrs. Robertson, the purchaser, never made the appellees any offer of $2,100, or any other sum for the property. But we do not see how this fact would relieve the appellants from liability if the appellees induced Mrs. Robertson to seek out the owners, and make the offer to them

Clifford *et al. v.* Meyer *et al.*

directly, or to another agent found by her at the place of business of one of such owners. To be the procuring cause of the sale, it was not necessary that appellees should themselves have conducted all the negotiations culminating in the sale of the property. It was enough if they set in motion the machinery by which the work was done. That they did this, we think sufficiently appears from the special finding of 'facts.

Appellant's counsel also think a demand should have been made before suit for the commissions of appellees. We do not agree with counsel in this. If the services were rendered as agreed, and the debt had thereby matured, as we think it had, by the sale of the property, it was the duty of appellants to pay it without demand. The doctrine that where a sum is payable on the happening of a certain contingency, and the same has arisen, the debtor must be notified thereof, and the money demanded of him before an action is begun, is not applicable. Here the parties were all familiar with the facts, the appellants being as fully apprised of the work done by appellees, and that the sale was made, as were the appellees. Besides, the finding shows, as we have seen, that before the deed was delivered, and the commission paid to Crawford, the appellees notified the appellants that Mrs. Robertson was their customer, and that they would claim their commission if the sale was consummated.

The last error assigned in general term was the overruling of the motion for a new trial. Some claim is made that the evidence fails to support the finding, but no particular infirmity is pointed out, and we have found none. The evidence tends to sustain the finding. Further discussion of the evidence would not be productive of any particular good.

Judgment affirmed

Filed May 11, 1893.