## MILLER *v.* STEVENS.

[No. 2,873. Filed November 24, 1899.]

BROKERS.— *Commission.— Complaint.— Quantum Meruit.*—A complaint upon the *quantum meruit* to recover a commission for services as a broker which alleges that plaintiff, at the special instance and request of defendant, procured a purchaser for a large general stock of merchandise, owned by defendant, which defendant desired to sell, and in all things complied with the request of defendant, is sufficient as against a demurrer, although it is not alleged that the purchaser was ready, willing, and able to purchase the stock, or that a sale was completed before the action was commenced, or prevented by defendant. *pp. 365-371.*

SAME.— *Commission.—Agreement to Furnish Purchaser.*—Where a broker is instrumental in bringing the owner of property and a purchaser together, and a sale or exchange is effected, the broker is entitled to a commission under a contract to furnish a purchaser to his principal. *p. 371.*

VERDICT.—*Answers to Interrogatories.—Conflict.*—The general verdict must stand as against answers to interrogatories, unless the answers are in irreconcilable conflict with the general verdict. *p. 372.*

INSTRUCTIONS.—*Harmless Error.*—A judgment will not be reversed because one or more instructions given, when standing alone, were erroneous, where, construing all the instructions together, it is apparent that the jury was not misled, and it affirmatively appears that the verdict was right upon the evidence. *p. 374.*

TRIAL.—*Venire de Novo.*—Before a motion for a *venire de novo* will lie, the verdict or finding must be so defective that no judgment can be rendered thereon. *p. 375.*

SAME.—*Venire de Novo.*—The failure to find material facts in a special finding or verdict is not cause for a *venire de novo.* *p. 376.*

From the Carroll Circuit Court. *Affirmed.*

*J. C. Farber*, for appellant.

*R. P. Davidson, A. Boulds, M. A. Ryan* and *W. R. Moore*, for appellee.

WILEY, J.—This was an action by appellee to recover from appellant a commission for services as a broker. The complaint is in two paragraphs. The first is a common count upon the *quantum meruit*, wherein it is averred that appel-

lee, at the special instance and request of appellant, procured a purchaser for a large general stock of merchandise owned by appellant, and which he desired to sell. In this paragraph it is averred that appellee did procure and furnish such purchaser, and in all things complied with the request of appellant. The second paragraph counts upon an alleged special agreement, whereby appellant, as is alleged, agreed to pay appellee a commission of $500 for procuring a purchaser for appellant's stock of goods, such commission to be paid as soon as the sale was completed. This paragraph alleges that appellee did furnish such purchaser, to whom appellant did sell his entire stock of goods, amounting to over $20,000 in the aggregate. In this paragraph some correspondence between appellant and appellee is set out.

Appellant moved to make the first paragraph more specific, and to strike out parts of the second. These motions were overruled and exceptions reserved. A demurrer to each paragraph of complaint was overruled. The issue was joined by an answer in general denial, and a trial by jury resulted in a general verdict for appellee, and with the general verdict the jury made special findings of fact by way of answers to interrogatories. Appellant's motion for judgment on the answers to interrogatories, motion in arrest of judgment, for a new trial, and for a venire de novo, were each overruled. All these adverse rulings are assigned as errors.

It is a conceded fact that all the negotiations between appellant and appellee were in writing, and such writing consisted wholly of letters and telegrams exchanged between them.

Before taking up the questions for discussion as they are presented by counsel, a brief reference to the contents of these letters etc. will be profitable. On April 8, 1897, appellant addressed a postal card to the Bank of Wisconsin, at Madison, in which he stated that he had a stock of goods that would invoice $18,000 to $20,000; that he was in poor

health and would dispose of the goods for good real estate and some cash; and that he had an established cash trade. The card closed as follows: "Should this not interest you, please hand this to your friends that may want an opportunity of this kind." The bank handed this card to appellee, who wrote appellant on April 13th. In that letter, appellee stated that he had made the real estate business a specialty for twenty years and that he had sold and exchanged several stocks of merchandise. After this statement the letter continues as follows: "If you have a nice clean stock as stated in your postal, I can get you a purchaser for it, if you will make it an object to the purchaser. Please state the very best discount you will give on the entire stock; also how long you have been in business, and how much of this stock is shelf worn and out of date. Will you pay me a cash commission of three per cent. of the gross amount of your sale, if I send you a purchaser who will purchase your stock. No sale no charge. If so, and you are disposed to make it an object to the cash purchaser, I will send you a man to buy you out as soon as I hear from you." In this letter inquiry was made as to the population of Frankfort, Indiana, where appellant's stock was; how far it was from Chicago, and how much rent would have to be paid for a store as occupied by appellant. April 14th appellant replied to appellee's letter, in which he said that he had a nice general stock in the lines as indicated by his letter-head; that he had an established cash trade; that he was partially paralyzed and had lost his right eye; that he was unable to attend to business; that he had a good location on the public square; that his rent was $40 per month. In this letter he gave the population of Frankfort at about 9,000, and the distance from Chicago as 135 miles. The letter closed as follows: "Business can be continued here or stock can be moved. I will take $12,000 to $15,000 in clear real estate, balance cash, or will give twenty per cent. discount for all cash. I am willing to pay you a cash commission as soon as deal is

completed and property has changed hands." April 15th appellee replied to appellant's letter, in which he said that the offer made was a liberal one, but that he first wanted to see if he could make a cash sale. * * * The letter then contained the following: "The purchaser I have in view for you has bought a good many purchases of this kind and he has had all the way from twenty-five to fifty per cent. discount. If you think you would entertain an offer of thirty per cent. discount of the wholesale price, I think I could induce him to go down and look you over, but first of all I would not make a sale of the size for $350, for I have too many opportunities to make just such sales where they pay all the way from three to five per cent. commission." The letter then stated he would make the sale for three per cent. and closed as follows: "If this meets your approval I will have my man come down and see you, and if your stock is what I imagine it should be, there is no doubt your being able to make a cash sale to him. * * * Should you fail to sell outright to him, I will then see what I can do for you in the way of exchange, but no doubt you prefer cash. Will you also state what portion of your stock is dry goods, what portion of clothing, what portion of boots and shoes, what portion of hats and caps and what portion of millinery. Whatever is done must be done very quickly as my man is contemplating another large purchase." April 16th appellant replied to this last letter as follows: "I will pay you $500 com. on a cash sale, payable and due as soon as deal is completed and property has changed hands. Send your man down and I will do my best to make a sale. Not having invoiced it is hard for me to make an estimate of each line, but as you say your man buys stocks of goods, he no doubt knows what a general stock is. I only carry the kinds and different lines of goods indicated by my letter-head. If he comes please let me know in advance." April 22nd appellee replied to this last letter, accepting the offer of appellant, disclosed the names of his customers, and sends

Miller *v.* Stevens.

them to Frankfort, and notified appellant by telegram when they would arrive. In this letter appellee said: "I saw the gentlemen whom I have been writing you about, and I think they will buy your stock of merchandise, and last evening, about nine o'clock, they decided to go down and look your stock over, and purchase it if it suited them, and you and they could agree on the price. * * * They are close dealers, but I am satisfied you can sell to them if you handle them right." Before the persons with whom appellee had been negotiating left Madison, Wis., for Frankfort, Ind., to examine the stock of goods and see if they could purchase it, appellee gave them a letter of introduction to appellant. In this letter he said: "This will introduce to you David Davis and Melanchton M. Welton * * * the gentlemen who I wrote you would buy your stock of merchandise, if it suits them, and you and they can agree on price." Appellee also telegraphed appellant that the intended purchasers for his stock had left for Frankfort.

Appellant urges four objections to the first paragraph of complaint: (1) That it does not allege sufficiently an employment of appellee by appellant; (2) that it does not allege that any sale was made or that a sale was not made because of the fault of the appellant; (3) it is not alleged that the purchaser was ready, willing and able to purchase appellant's stock of goods, and (4) that it is not alleged that a sale was completed before the action was commenced, or that a sale was prevented by appellant. We do not think any of these objections are well taken. This court, in *Cannon v. Castleman* (Ind. App.), 55 N. E. 111, held a complaint for a broker's commission, similar but less formal, sufficient, and on the authority of that case, we must hold that the first paragraph of complaint was sufficient against a demurrer, and that there was no error in overruling the demurrer to it.

The second paragraph proceeds upon the theory that appellee furnished to appellant a purchaser to whom he

made his own sale. There is a marked difference between
a contract by a broker to furnish a. purchaser. to his prin-
cipal and a contract to effect a purchase or sale. In the
first instance the broker has earned his commission when
he has introduced and brought together the principal and
the proposed purchaser between whom a deal is per-
fected, and in the second instance it is the duty of the
broker to perfect a sale upon the prescribed terms submitted
to him by the principal before he is entitled to his commis-
sion. The postal card and letters above referred to must be
regarded as constituting the contract between appellant and
appellee, and to determine just what that contract was, we
must look to the entire correspondence and construe it
together. By a postal card, appellant informed appellee that
he had a large stock of merchandise worth about $20,000,
which he desired to sell or trade, and that he would take
good real estate and some cash. Appellee then wrote appel-
lant inquiring about his stock, asked if he would pay a com-
mission of three per cent. if he would send him a purchaser,
and that he would send him a purchaser to buy him out as
soon as he heard from him, etc. In response to this letter,
appellant informed appellee that he would take $12,000 to
$15,000 in clear real estate and balance cash, and that he
would pay him a commission of $350. Appellee declined to
undertake to find a purchaser for $350 commission, but in-
sisted on receiving three per cent. Referring to appellant's
offer to take part real estate, he said to him that he would first
try and see if he could not make it a cash deal. Appellant
replied that he would pay a commission of $500 on a cash
sale, and asked appellee to "send your man down and I will
do my best to make a sale." Construing this correspondence
together, as constituting the contract between the parties,
it is clear to us that appellant agreed to pay appellee a com-
mission of $500 if the latter should find him a purchaser to
whom a sale might be made. This contract does not specify
any definite terms upon which the sale was to be made.

While there are some sentences in the correspondence which indicate that appellee was trying to find a cash purchaser, yet there is much in it that shows that appellant was willing to sell for part cash and part in real estate. It is shown by the complaint that appellee did furnish to appellant purchasers to whom he sold his stock of goods, fixtures, etc., upon his own terms. It seems to us that the contract was plain and clear, and that the second paragraph of complaint contained all necessary averments to constitute a cause of action. If a broker who has property for sale is instrumental in bringing the owner of the property and a purchaser together, and a sale or an exchange is effected by the parties in interest, the broker will be entitled to his commission. Cox v. *Haun*, 127 Ind. 325; *Barnett* v. *Gluting*, 3 Ind. App. 415; *Clifford* v. *Meyer*, 6 Ind. App. 633; *Platt* v. *Johr*, 9 Ind. App. 58; *Lockwood* v. *Rose*, 125 Ind. 588; *Haug* v. *Haugan*, 51 Minn. 558, 54 N. W. 874; *McFarland* v. *Lillard*, 2 Ind. App. 160.

In New York it was held that a broker was entitled to compensation if a sale was consummated through his agency as the procuring cause; and that if his communications with the purchaser were the cause or means of bringing him and the owner together and the sale resulted in consequence thereof, the broker could recover. *Lloyd* v. *Matthews*, 51 N. Y. 124.

In Missouri, it was held that a broker who introduced a purchaser to his principal, or gave his name, so a sale is effected by the owner, though on different terms than first contemplated, such broker is entitled to his commission. *Henderson* v. *Mace*, 64 Mo. App. 393.

If we keep in view the distinction between a contract of a broker to make a sale of his principal's property upon prescribed terms, and his contract to furnish his principal a purchaser to whom the principal sells upon his own terms, the solution of the question we are now considering becomes easy.

While the second paragraph of complaint is not a model pleading, it nevertheless states a cause of action, and there was no error in overruling the demurrer to it. Appellant next discusses the overruling of his motion for judgment on the answers to interrogatories.

A careful examination and consideration of the answers to interrogatories leads us to the conclusion that such answers are not in irreconcilable conflict with the general verdict. In such case, the general verdict must stand. In the correspondence between the parties something was said about a discount from the wholesale price of twenty per cent, and thirty per cent. for cash, but it is clear that no definite agreement was made upon that basis. The interrogatories attempt to elicit the fact that such contract was made and that the purchasers refused to purchase on such terms. By their answers, the jury found that no such contract was made. We are unable to find any conflict between the general verdict and the answers to interrogatories.

Appellant's motion for a new trial contained seventeen causes, and, in the order of discussion, the overruling of such motion will now be considered. The first cause assigned is that the verdict is not sustained by sufficient evidence; the second, that the verdict is contrary to law, and third that the verdict is contrary to the law and the evidence. These may be considered together, and can be disposed of in few words. To our minds, the evidence is clear and convincing, and fully sustains the verdict. In fact, we do not see how the jury could have reached a different conclusion. The evidence disclosed the fact that appellant occupied two business rooms in Frankfort, which adjoined each other and were connected by an opening between them. Appellant attempted to show that the stock of goods in one of the rooms was the one he had reference to in his letters to appellant, and that the stock in the other room was not included. We think the evidence fairly shows that the goods in both rooms constituted one stock, and it is clear both from the letters

and the evidence of appellee that he had no knowledge that he was to send a purchaser to buy the goods in any specified room. It is true that the evidence shows that appellant tried to sell the stock of goods that was in one of the rooms to the purchasers sent by the appellee, but they refused to purchase it upon the terms asked, and a trade was finally made for the entire stock in both rooms, except that $4,000 in value of goods was invoiced back to appellant. For the goods purchased, appellant received in cash $—— and a tract of land valued at $1,600. Appellant rested his defense upon two basic propositions: (1) That the stock of goods he meant to offer for sale was the one in the south room; (2) that the appellee undertook to furnish him a purchaser to buy that stock at thirty per cent. discount from the wholesale price. Neither of these propositions is supported by the evidence. Appellant and appellee lived in different states; they were entire strangers; all that appellee knew about appellant's stock of goods he learned from the postal card and the letters written by appellant, and there is certainly nothing in them that even intimates that the stock appellant wanted to sell was in the south room. On the contrary, the postal card sent to the bank and by it turned over to appellee would indicate that appellant wanted to dispose of all his stock and make a change in his business. In it appellant said: "I have a general stock of goods, will invoice $18,000 to $20,000 * * * established trade, poor health, must make change." Again in a letter he said that he was paralyzed and unable to attend to business. It is enough to say that these letters clearly convey the idea that appellant wanted to dispose of his entire stock of goods and quit business, and it is unquestionably the fact, shown by the letters and the evidence, that appellee had no knowledge that appellant occupied two rooms, and that what he wanted to sell was in the south room. While it is true some mention was made in the correspondence about a discount of twenty per cent. or thirty per cent. on the wholesale price, yet no con-

tract or agreement between appellant and appellee was made that appellee would furnish a purchaser upon such terms. The evidence is uncontradicted that appellee did not inform the purchasers that they were to buy at any specified price or fixed discount, and it is shown that they went to Frankfort without knowing what price they were to give. It is also shown that they called upon appellant to look his goods over and to purchase his stock at such price and upon such terms as they could make with him. This they did, and there is no question but through the agency of appellee, as the procuring cause; the sale was made. The evidence fully sustains the verdict.

From the fourth to the eleventh causes, inclusive, assigned in appellant's motion for a new trial, the action of the court is challenged in giving, refusing to give, and modifying and giving as modified certain specified instructions. By these several causes assigned in his motion for a new trial, some eighteen instructions are brought to our attention for review. Many of these are quite lengthy, and a detailed discussion of them would require much time and extend this opinion to an unreasonable length without serving any corresponding useful purpose. A careful study and consideration of all the instructions lead us to the conclusion that the trial court fairly and fully instructed the jury as to the law applicable to the facts as disclosed by the evidence, and that there was no error in giving, refusing to give, and modifying and giving as modified, any of the instructions upon which reversible error can be predicated. Construing all the instructions together, we feel justified in saying that it is apparent the jury was not misled, and in such case, though one or more of the instructions standing alone might not have been correct, the judgment should not be reversed for such reason. *Chapple* v. *Davis*, 10 Ind. App. 404; *Kepler* v. *Jessup*, 11 Ind. App. 241; *Shields* v. *State*, 149 Ind. 395. While we can not approve some of the instructions standing alone, as correct statements of the law, yet it affirmatively appears

to us that the verdict was right upon the evidence, and this being true, we are not warranted in reversing the judgment on account of such erroneous instructions. *Woods* v. *Board, etc.*, 128 Ind. 289; *Swaim* v. *Swaim*, 134 Ind. 596; *Garrigan* v. *Dickey*, 1 Ind. App. 421; *Shields* v. *State, supra; Mode* v. *Beasley*, 143 Ind. 306; *Stanley* v. *Dunn*, 143 Ind. 495; *City of Lafayette* v. *Ashby*, 8 Ind. App. 214; *Grand Rapids, etc., R. Co.* v. *Diether*, 10 Ind. App. 206; *Island Coal Co.* v. *Neal*, 15 Ind. App. 15.

Appellant's sixteenth reason assigned for a new trial is for alleged errors of law occurring upon the trial, and is divided into seventeen subdivisions, all of which relate to the introduction and rejection of evidence. Our attention has been called to the several matters complained of by counsel in his argument, but we are unable to see that any reversible error was committed by the trial court in admitting and rejecting the evidence complained of.

Appellant's seventh specification in his assignment of errors is that the court erred in overruling his motion for a *venire de novo*. This motion was in writing and was based upon the alleged ground that the "verdict  *  *  ,*  is so ambiguous and uncertain that no judgment can be rendered thereon." Before a motion for a *venire de novo* will lie, the verdict or finding must be so defective that no judgment can be rendered thereon. *Zink* v. *Dick*, 1 Ind. App. 269; *Chicago, etc., R. Co.* v. *Barnes*, 2 Ind. App. 213; *Evansville, etc., R. Co.* v. *Taft*, 2 Ind. App. 237; *Knight* v. *Knight*, 6 Ind. App. 268; *Case* v. *Ellis*, 9 Ind. App. 274; *Waterbury* v. *Miller*, 13 Ind. App. 197; *Seiberling* v. *Tatlock*, 13 Ind. App. 345; *Garrett* v. *State, ex rel.*, 149 Ind. 264.

It is perfectly clear that the general verdict is neither uncertain nor ambiguous, and appellant does not urge any objections to it. It is argued, however, that the answer to interrogatory three is ambiguous and uncertain, and it is upon that answer that the motion for a *venire de novo* is based. That interrogatory is as follows: "Did defendant

and plaintiff have any other contract in relation to the sale of defendant's goods except the one wherein defendant agreed to pay plaintiff $500 for furnishing him a purchaser who would pay him seventy per cent. of the cost price of his goods?" The answer was: "We find no contract for seventy per cent." Before the discharge of the jury, appellant moved the court that the jury be required to re-answer the interrogatory, which motion the court overruled. It is urged that the interrogatory was direct and pertinent; that it might have been answered directly, and that the answer is evasive and not responsive. Grant this to be true, and still the failure of the jury to answer the question directly is not a ground for a motion for a *venire de novo*. The failure to find material facts in a special finding or verdict is not cause for a *venire de novo*. *Jones* v. *Casler*, 139 Ind. 382; *Waterbury* v. *Miller*, *supra; Durflinger* v. *Baker*, 149 Ind. 375. There was no error in overruling the motion.

Appellant urges that the court erred in overruling his motion in arrest of judgment. What we have said as to the sufficiency of the complaint disposes of this question adversely to appellant. This disposes of every question discussed by appellant's counsel.

We do not find any reversible error in the record, and the judgment is affirmed, with ten per cent. damages.