No. 28,099.

J. W. Byrd, *Appellee*, v. The Bruce-Jones Live Stock Commission Company, *Appellant*.

(266 Pac. 743.)

Opinion filed May 5, 1928.

*Dempster O. Potts* and *R. G. Bennett,* both of Wichita, for the appellant.

*H. W. Hart, Glenn Porter, Enos E. Hook* and *E. H. Jamison,* all of Wichita, for the appellee.

The opinion of the court was delivered by

Hopkins, J.: The action was one to recover a commission for the locating of certain cattle for a purchaser. Plaintiff prevailed and defendant appeals.

The facts are substantially these: In August, 1924, plaintiff, who resided in New Mexico, received a telegram from defendant asking him if he was in a position to show them cattle, stating the commission to be paid him and asking him to begin (such service) at once and continue indefinitely. The plaintiff accepted. The contract of employment was contained in letters and telegrams. One Anderson, agent and purchaser for defendant, met plaintiff in Albuquerque and was taken by plaintiff to such ranches as he had reason to believe had cattle which could be purchased. Those in question, known as the Block cattle, were shown to Anderson about the middle of September, 1924. No purchase was made at that time as Anderson thought the owner desired too high a price. Anderson

returned to Wichita but went back the latter part of October and purchased the cattle in question. They were brought to Wichita and sold November 13, 1924. Plaintiff testified that he loaded cattle for defendant on October 16, and that Anderson said to him, " 'I believe I will go in and let this thing rest awhile.' And I said, 'All right, when you get ready to go again, I will be ready.' "

The defendant contends that the plaintiff is not entitled to recover a commission because the contract provided that his services should extend only until such time as they were desired by the defendant; that defendant had a right to discharge plaintiff at any time, and did so on or about the 16th day of October; that when Anderson went back into the same territory in the latter part of October and purchased the cattle in controversy, he did not request the plaintiff's services, and that the deal was altogether different from the original one at the time the plaintiff showed him the cattle.

The contract, among other things, provided that plaintiff was to use his automobile in driving defendant's purchaser about the country and to give the defendant the benefit of his acquaintance with stockmen, the benefit of. his knowledge of cattle, bring the parties together, and leave the subsequent negotiations to the defendant's agent and the cattlemen.

The. only questions for determination are whether the plaintiff was entitled to a commission on the Block cattle purchased at the later date. It is not disputed that the plaintiff took the defendant's agent to the Block ranch and pointed out the particular bunch of cattle, nor is it disputed that these cattle were subsequently purchased by the defendant.

There appears no question but that the defendant received the benefit of the efforts of the plaintiff in complying with his contractual obligation. A reasonable conclusion follows that plaintiff is entitled to his commission (fifty cents per head) on the cattle in question. *Port Huron Co. v. Wilber*, 75 Kan. 175, 88 Pac. 892, was a case where the plaintiff secured prospective purchasers for the defendant's machinery. The names of such prospective purchasers were supplied by the plaintiff to the defendant. Later the plaintiff was dismissed from such employment. Subsequently the defendant sold machinery to one of such prospective purchasers, and it was held that the plaintiff was entitled to his commission, as he had fully performed his obligation. It was said in the opinion:

"The general rule is: When a sale is actually consummated, if the broker is so far the contributing or proximate cause thereof, that the particular sale would not have been made but for some act or effort of his, he is entitled to his commission, although he takes no part in the negotiations thereof." (p. 178.)

The defendant contends that the plaintiff here was discharged prior to the consummation of the transaction and therefore is not entitled to his commission. It is not clear that the plaintiff was ever discharged. The only evidence on the point appears to be the statement of Anderson that he would let the plaintiff know if he needed him again. Plaintiff positively testified that the termination of his service was never discussed and that he was never discharged from the employment of the defendant, but that after his last meeting with Anderson he continued to locate cattle by mail, telephone and otherwise. There was evidence that the plaintiff was not working for anyone else during the months of October and November and that he did not consider that the defendant had abandoned the territory. Even though the plaintiff was not in the employ of the defendant at the time the deal for the Block cattle was consummated, we are of opinion he was entitled to his commission and that the court's instructions to the effect that plaintiff could recover whether or not he was in the employ of the defendant at the time of the purchase, were correct. In *Smith v. Plant*, 216 Mass. 91, the headnote in 103 N. E. 58, reads:

"The rule that, at any time before the broker procures a customer or makes a sale, the principal may in good faith discharge the broker, does not apply to a case where the principal employed the broker to introduce him to specified individuals for the purpose of enabling the principal to make a sale but with the express understanding that after the introductions were made, the principal was to conduct negotiations for himself, in which case the principal cannot discharge the other after the meetings have been brought about, but before the sale is consummated."

In another case it was said that:

"There is a marked difference between a contract by a broker to furnish a purchaser to his principal, and a contract to effect a purchase or sale. In the first instance, the broker has earned his commission when he has introduced and brought together the principal and the proposed purchaser, between whom a deal is perfected, and in the second instance, it is the duty of the broker to perfect a sale upon the prescribed terms submitted to him by the principal before he is entitled to his commission. . . . If we keep in view the distinction between a contract of a broker to make a sale of his principal's property upon prescribed terms, and his contract to furnish his principal a purchaser to whom the principal sells upon his own terms, the solution of

the question we are now considering becomes easy." (*Miller v. Stephens*, 23 Ind. App. 365, 370, 371, 55 N. E. 262.)

"Though much alike in some respects, there are important distinctions between a broker's undertaking to negotiate or effect a sale and one to merely find a purchaser, although they are often dealt with by the courts as being identical in nature and results. The failure to properly distinguish between these two differing classes of contracts, and the attempt to apply to one class all of the principles which regulate the other, have produced many of the inconsistencies and much of the confusion with which the reported cases on this subject seem to abound." (*Handley et al. v. Shaffer*, 177 Ala. 636, 653, 59 So. 286.)

"Where a contract for broker's services only required him to find and furnish a purchaser to whom a sale could be made by the defendant, plaintiff's commissions were earned when a sale was effected to a customer introduced to defendant by him." (*Provident Trust Co. v. Darrough*, [Ind.] 78 N. E. 1030.)

A complaint of certain instructions given and refusal to give others has been considered but furnishes no basis for reversal. Authorities cited and relied on by the defendant need not be distinguished. In our opinion, they are not applicable to the facts and circumstances under consideration.

The judgment is affirmed.