Sanders v. Weelburg, Executrix.

Filed June 15, 1886; petition for a rehearing overruled Sept. 15, 1886.

---

No. 9456.

## SANDERS v. WEELBURG, EXECUTRIX.

SURETYSHIP.—*Contribution.*—*Claim for Against Decedent's Estate Triable by Jury.*—A claim for contribution by a surety against the estate of a deceased co-surety is triable by jury.

SAME.—*Security Held by One Surety Enures to Benefit of All.*—*Trust.*—Where one surety obtains a security, it enures at once to the benefit alike of

himself and his co-surety. He occupies the position of a trustee for his co-surety, and can not deal with the fund to the prejudice of the latter.

SAME.—*Purchase at Judicial Sale by One Surety of Principal's Property.—Rights of Co-Surety.*—Where one surety, having paid a judgment for which he and his co-surety are liable, sues out execution thereon and procures the sale of the principal's property, which he purchases at comparatively nominal prices, and then sues his co-surety for contribution, the latter may show, in bar of the suit, that such property of the principal, at its fair value, was sufficient to satisfy the judgment.

PRACTICE.—*Special Finding.—Judgment Non Obstante.*—A judgment notwithstanding the general verdict will not be rendered on a special finding of facts which is vague and indefinite, and not so inconsistent with the general verdict as to control it.

SAME.—*Presumptions.*—All reasonable presumptions will be indulged in favor of the general verdict, while nothing will be presumed in aid of the special findings.

From the Marion Circuit Court.

*A. F. Denny*, for appellant.

*A. C. Ayres* and *E. A. Brown*, for appellee.

HOWK, C. J.—This was a claim in favor of the appellant and against the appellee, as the executrix of the last will of Henry Weelburg, deceased. The claim was founded on a judgment, which it was alleged that one Will. F. A. Bernhamer, administrator, etc., recovered on the 29th day of January, 1879, in the Marion Superior Court, against one Frederick Weelburg, as principal, and against the appellant and the appellee, executrix, etc., as co-sureties, for the sum of nineteen hundred and fifty-seven dollars and twenty cents, and bearing interest at eight per cent. per annum. The appellant stated in his claim or complaint that, as one of such co-sureties, on and before the 9th day of April, 1879, he paid on said judgment the aggregate sum of eighteen hundred and eleven dollars and fifty cents, " in full of the balance of said judgment, interest and costs," and the execution then outstanding, as to him, was returned satisfied; that on the 10th day of April, 1879, an execution was issued on said judg-

ment, in favor of the appellant as such co-surety, and delivered to the sheriff of Marion county ; that by virtue of said execution, the sheriff, on April 16th, 1879, levied on certain property of Frederick Weelburg, the principal in said judgment, which property the sheriff, on April 26th, 1879, sold to the appellant for the sum of $378, of which sum, after the payment of costs, there was credited on the judgment the sum of $359.52 ; that on May 1st, 1879, by virtue of the same execution, the sheriff levied on certain real estate and leasehold interests of Frederick Weelburg, the principal in said judgment, which property the sheriff, on May 31st, 1879, sold to the appellant for $50, of which sum, after the payment of costs, there was credited on the judgment the sum of $43.20 ; that on July 14th, 1879, the sheriff sold on the same execution to the appellant, for the sum of $28.29, certain personal property of Frederick Weelburg, the principal in said judgment, of which sum $21 was credited on the judgment; and that, on April 2d, 1880, the execution was returned no other property found of Frederick Weelburg, principal in the judgment, whereon to levy. Upon the foregoing facts, the appellant claimed that there was due him, by way of contribution, from the appellee, executrix, etc., as his co-surety in the above described judgment, the sum of $700, and eight per cent. per annum interest thereon after the 13th day of March, 1879.

The cause was tried by a jury, and a general verdict was returned for the appellee, the defendant below. Over the appellant's motions for judgment in his favor on the special findings of the jury, and for a new trial, the court rendered judgment for appellee on the general verdict.

The appellant has assigned as errors the following decisions of the circuit court:

1. In permitting the cause to be tried by a jury over his objections ;

2. In overruling his motion for judgment in his favor on

Sanders *v.* Weelburg, Executrix.

the special findings of the jury, notwithstanding their general verdict; and,

3. In overruling his motion for a new trial.

We will consider and decide the several questions presented by these alleged errors in the order of their statement.

1. No sufficient reason occurs to us, and none has been suggested by appellant's learned counsel, why this cause should not have been tried as it was by a jury, at the request of the appellee. We have given the substance of appellant's claim or cause of action, and it will be seen therefrom that he has sued simply to recover money alleged to be due him, by way of contribution, from appellee's decedent as his co-surety. Like all other claims against a decedent's estate, for a money demand merely, the case in hand was properly tri-able by jury, upon the request of either of the parties, plaintiff or defendant. The court did not err, therefore, in permitting this cause to be tried by a jury, over appellant's objections.

2. The second error, of which appellant complains, is the overruling of his motion for judgment in his favor on the special findings of the jury, notwithstanding their general verdict. It is shown by the record that, with their general verdict for the appellee, the jury also returned into court their special findings on two questions of fact, submitted to them by appellant under the direction of the court, in substance, as follows:

" 1. Are the facts in the statement, annexed to the claim or complaint herein, marked ' Exhibit A,' down as far as the conclusion thereof, commencing with the words—' at the date of filing this claim,'—true? " Answer : " Yes."

" 2. Has any money, other than the sums realized from the sheriff's sales, specified in such ' Exhibit A,' ever been paid to the plaintiff, Sanders, on the said judgment? " Answer : " No."

It is certain, we think, that the trial court committed no error in overruling appellant's motion for judgment in his

favor, on the facts specially found by the jury, notwithstanding their general verdict against him. The facts found by the jury, in answer to appellant's interrogatories, were entirely too vague, indefinite and uncertain to constitute a sufficient basis for any judgment, and certainly were not so inconsistent with the general verdict, as that they would necessarily control the latter and authorize the court to give judgment accordingly. Section 547, R. S. 1881. In such a case, of course, under repeated decisions of this court, the general verdict must stand and judgment must be rendered thereon. *Amidon* v. *Gaff*, 24 Ind. 128; *Detroit, etc., R. R. Co.* v. *Barton*, 61 Ind. 293; *Woollen* v. *Wishmier*, 70 Ind. 108; *Carver* v. *Leedy*, 80 Ind. 335; *Grand Rapids, etc., R. R. Co.* v. *McAnnally*, 98 Ind. 412. In determining the questions presented by a motion for judgment on the special findings of the jury, notwithstanding their general verdict, we have uniformly held that all reasonable presumptions will be indulged in favor of the general verdict, while nothing will be presumed in aid of such special findings. *McCallister* v. *Mount*, 73 Ind. 559; *Cook* v. *Howe*, 77 Ind. 442; *Lassiter* v. *Jackman*, 88 Ind. 118; *Baltimore, etc., R. R. Co.* v. *Rowan*, 104 Ind. 88.

It follows from what we have said, that the second error, of which appellant complains, is not well assigned and will not authorize the reversal of the judgment.

3. The important and controlling questions in this cause arise under the third alleged error, namely, the overruling of appellant's motion for a new trial. In this motion, many causes were assigned for such new trial, consisting chiefly of alleged errors of law occurring at the trial. There is but little, if any, controversy between the parties and their counsel, as we understand them, in regard to the actual facts of this case; but the controverted and disputed questions between them are, for the most part, in relation to the rules of law or equity which are applicable to such facts, and which must govern and determine their rights and liabilities re-

spectively. We will consider and decide these controverted and disputed questions without especial reference to any of the causes assigned by appellant in his motion for a new trial.

Appellant shows in his complaint, as we have seen, that he and the appellee were co-sureties of one Frederick Weelburg, as principal debtor, in a certain judgment rendered against all of them, on January 29th, 1879, in and by the superior court of Marion county; that, on April 9th, 1879, appellant paid the balance then due of such judgment, interest and costs, to wit, the sum of $1,811.50; that, on the next day, April 10th, 1879, an execution was issued on such judgment in favor of appellant, as such co-surety, and delivered to the sheriff of Marion county; that, by virtue of such execution, such sheriff offered and sold to appellant certain property of the principal debtor, on April 26th, 1879, for $378, and, on May 31st, 1879, certain real estate and leasehold interests of such principal debtor, for $50, and, on July 14th, 1879, certain personal property of the principal in such judgment, for $28.29; and that, on April 2d, 1880, such execution was returned, no other property found of Frederick Weelburg, principal in such judgment, whereon to levy. On such several sales to appellant, his complaint shows that he paid the costs and credited the remainder of his several bids on the judgment.

After his several purchases of the property of Frederick Weelburg, principal in such judgment, and after he had credited the judgment with the net amounts of his several bids for such property, as stated in his complaint, appellant filed his claim herein to recover of the appellee, as his co-surety in such judgment, by way of contribution, the sum of $700 and interest thereon at the rate of eight per cent. per annum from and after March 13th, 1879. It is claimed on behalf of the appellant, that he purchased the property of the principal in the judgment, at public sales thereof by the sheriff of the county, where all parties, the appellee included, had the right to appear and bid therefor; that he had the lawful

right to purchase such property, at such sales, and as no one would or did bid more therefor than he, to purchase the same at and for the amounts of his several bids, without regard to the actual value thereof; and that, having so purchased such property, he can not be required to account therefor even to the appellee, as his co-surety, at its actual value, or at any greater value than the aggregate amount of his several bids.

On the other hand, it is claimed on behalf of appellee that, as she was the co-surety of appellant in such judgment, equity, good conscience and fair dealing exacted of him the utmost good faith in his transactions with her in relation to the judgment, and in connection with the property of the principal in such judgment; that as the judgment was a common burden to her and appellant, as such co-sureties, so the property of the principal in the judgment became and was a common fund for the benefit and protection alike of each and both of them; that by suing out and delivering to the sheriff of the county an execution on such judgment, in appellant's favor, he acquired a security for the payment of the judgment, by the lien of the execution on the property of the principal therein, which security enured to the benefit and for the protection of the appellee, as his co-surety; that by appellant's acts in procuring forced sales of such property of the principal in the judgment, and in becoming the purchaser thereof at prices relatively nominal, the value of such security became and was largely depreciated, if not wholly lost; and that, by means of the premises, appellant became and was justly chargeable with the fair and reasonable value of such security to the appellee, as his co-surety, in the equitable adjustment of appellant's claim herein to contribution.

These conflicting claims of the parties respectively involve, as it seems to us, the entire merits of the controversy in this cause. If appellant is right in his claim or contention, as we have heretofore stated it, the general verdict for appellee is wrong, and the judgment thereon can not stand, but must be reversed, because the record before us clearly shows that

the case was tried below upon a theory which antagonizes and is irreconcilable with appellant's claim or contention. If, on the other hand, appellee's claim or contention, as it is heretofore stated, is the correct one, as we think it is, the general verdict is right upon the evidence, and the judgment below must be affirmed. It is abundantly shown by the evidence in the record, that the fair and reasonable value of the property of the principal in the judgment, which was levied upon and sold by the sheriff upon the execution in favor of appellant, and of which he became the purchaser as aforesaid, largely exceeded in the aggregate the full amount due him on such judgment, of principal, interest and costs.

Appellant, having fully paid and satisfied the judgment to the judgment creditor or plaintiff, by means of such payment, acquired at the time a cause of action against the appellee, as his co-surety in such judgment; but in his suit on such cause of action, it is clear, we think, that, under our law, he could not recover of the appellee any more than she was " equitably bound to pay." *Prima facie,* appellee as the co-surety of appellant was liable to him for the one-half of the sum paid by him to the judgment plaintiff, in satisfaction of such judgment; but this *prima facie* liability was subject to reduction by whatever sums could be realized from the property of the principal in such judgment. The property of the principal in the judgment was a common fund for the benefit and protection of both the sureties alike, the appellee as well as the appellant. By his payment of the judgment to the judgment plaintiff, appellant became and was practically, at least, the owner thereof, and was fully authorized to sue out execution thereon for his own use, under the provisions of section 1214, R. S. 1881. The judgment was then a lien on the real estate and chattels real of the principal therein; and when, on the next day after his payment of such judgment, appellant sued out an execution thereon, in his own favor, and delivered the same to the sheriff of the county, he thereby

acquired a valid lien on all the personal property of such principal. These liens upon the real and personal property of the principal in the judgment were a security which appellant had acquired and held as aforesaid; but such security enured in equity to the benefit and for the protection of the appellee, as the co-surety of appellant in such judgment.

In Sheldon on Subrogation, section 143, the law on the subject under consideration is thus stated: "When one of two or more co-sureties obtains in any manner a security for the payment of the debt, he does this for the benefit of all the sureties; he is a trustee for his co-sureties as to such security, and is held for them to the duties which arise from that relation, and must do no act, or voluntarily omit to do any act, by which such security will be depreciated or lost, but must faithfully apply it to the payment of the debt; or he will be chargeable to his co-sureties with the amount of the security, in the adjustment of their proportions of the debt." The language quoted and the doctrine declared are fully supported by the numerous authorities cited in the footnotes by the learned author.

In *Hall* v. *Robinson*, 8 Ired. (N. C.) 56, it was held by the Supreme Court of North Carolina, that an action for contribution is an equitable one, " in which nothing can be recovered but what *ex æquo et bono*, the defendant ought to pay." The court says: " The relief between co-sureties in equity proceeds upon the maxim, that equality is equity; and that maxim is but a principle of the simplest natural justice. It is a plain corollary from it, that when two or more embark in the common risk of being sureties for another, and one of them subsequently obtains from the principal an indemnity or counter-security to any extent, it enures to the benefit of all."

In *Owen* v. *McGehee*, 61 Ala. 440, it was held by the Supreme Court of Alabama, that whenever persons stand in such relation to a common burden, that contribution between them may be compelled, neither can speculate on the com-

mon liability, and whatever benefits or advantages are acquired by one, in dealings with the common creditor, enure equally to the benefit of all.

In *Schmidt* v. *Coulter*, 6 Minn. 492, it was held by the Supreme Court of Minnesota, that where one of two or more co-sureties obtains in any manner a security for the debt, he holds it for the benefit of all the other sureties, and if, by any act or omission on his part, such security becomes depreciated or lost, he will be chargeable with the amount of such security in an adjustment with his co-sureties of their several proportions of the debt. So, in *Comegys* v. *State Bank*, 6 Ind. 357, it was held by this court that sureties are entitled to the benefit of all securities, which have been taken by any one of them to indemnify himself against their joint liabilities. Story Eq. Jurisprudence (13th ed.), section 499, *et seq.*

Where one surety obtains a security, it enures at once to the benefit alike of himself and his co-surety. He can not deal with such security to his own advantage, and to the prejudice of his co-surety, without consulting the latter and without his assent. He occupies the position of a trustee for his co-surety, and can not deal with the fund to the prejudice of the latter, without his authority or consent. In such case, where the surety has it in his power, for his own advantage, to sacrifice the common fund which, in good conscience, he is bound to protect, the general doctrine is that he will not be permitted to avail himself of any such advantage to his own profit, and to the loss and detriment of his co-surety.

We do not decide, in this case, that appellant did not have the right to sue out execution on the judgment, and procure the sale by the sheriff of the principal's property; for this right he clearly had. What we do decide is that if the appellant, at such sales, purchased the property of the principal, at comparatively nominal prices, and then sued his co-surety for contribution, she had the right, in bar of such suit,

to show, as she did, that such property, at its fair value, was more than sufficient to satisfy such judgment.

Applying the law as we have stated it to the case under consideration, as made by the evidence appearing in the record, we are of opinion that the jury reached a right conclusion in their general verdict. The cause seems to us to have been fairly tried on its merits, and a right result was arrived at, we think, in the circuit court. In such a case errors in relation to the instructions, if any were committed, would not authorize the reversal of the judgment; for our statute imperatively requires, "where it shall appear to the court that the merits of the cause have been fairly tried and determined in the court below," that the judgment shall not "be stayed or reversed, in whole or in part." Section 658, R. S. 1881. *Norris* v. *Casel,* 90 Ind. 143; *Ledford* v. *Ledford,* 95 Ind. 283; *Daniels* v. *McGinnis,* 97 Ind. 549; *Perry* v. *Makemson,* 103 Ind. 300.

Our conclusion is that the court committed no available error in overruling appellant's motion for a new trial of this cause.

The judgment is affirmed, with costs.

Filed June 5, 1886; petition for a rehearing overruled Sept. 15, 1886.