Woods v. The Board of Commissioners of Tipton County.

No. 14,980.

WOODS v. THE BOARD OF COMMISSIONERS OF TIPTON
COUNTY.

NEGLIGENCE.—*Traveller on Highway.— Voluntary Intoxication.*—If a traveller on a highway, by reason of his own voluntary intoxication, exposes himself to danger and receives injuries which he could, and by the exercise of ordinary prudence would have avoided if sober, he is guilty of contributory negligence, and can not recover for such injuries.

INSTRUCTIONS TO JURY.—*Erroneous Instructions.— When Judgment not Reversed Therefor.*—Where the record affirmatively shows that the verdict is right upon the evidence, the judgment will not be reversed because the court has erred in the instructions given to the jury.

From the Hamilton Circuit Court.

*R. R. Stephenson* and *W. R. Fertig*, for appellant.

*G. H. Gifford, T. J. Kane* and *T. P. Davis*, for appellee.

McBRIDE, J.—This was a suit by the appellant to recover damages for personal injuries sustained by him, and alleged to have been caused by a defective approach to a bridge in Tipton county.

Several errors are assigned and argued, but the conclusion we have reached, after a careful consideration of the evidence, renders it unnecessary to consider or pass upon them.

The facts, as shown by the evidence, are substantially as follows:

Adjoining the town of Tipton, in Tipton county, and forming its southern boundary, is Cicero creek. For a great many years a bridge was maintained over said creek at a point a short distance east of the southern terminus of Main street. In June, 1885, the board of county commissioners adopted an order condemning said bridge, and declaring it to be unsafe and unfit for travel. They erected a new bridge, placing it at the south end of Main street. The new bridge was completed and received by the county in September, 1885. Thereafter travel was mainly over the new bridge. The old

VOL. 128.—19

bridge, however, was left standing, and the commissioners gave it to one James H. Fippen on condition that he place barriers at the approaches to prevent people driving on it, and that he should tear it down and remove it, and turn over to the county the bolts used in its construction. Barriers were erected but were removed by some person. The old bridge was approached by embankments, extending for some distance from each end, and several feet in height. After the completion of the new bridge the roadway along the approaches to the old bridge became partially overgrown with weeds, and in the year 1886 the approach to the south end was partially washed away, leaving a chasm six or seven feet wide, extending in the shape of the letter V nearly across the roadway, and cut down to a considerable depth. This was the situation on the 9th day of March, 1887. At that time the appellant was a farmer, residing at Atlanta, in Tipton county, and on the day in question he came to Tipton, where, by his own testimony, he spent the day, drinking and gambling.

By the testimony of the town marshal and others he became very deeply intoxicated, and was so noisy and troublesome that the marshal, after trying in vain to persuade him to leave town, twice had men take him out, but each time he returned, and about sunset, finding him still on the street, the marshal threatened to lock him up if he did not go, and he then got into his buggy and started off. The marshal says he was maudlin drunk, and staggered. This time he left town, crossing Cicero creek over the new bridge. After getting out of town he decided to return, and attempted to do so by way of the old bridge. When within one hundred and fifty feet of the bridge he stopped his horse and was seen and heard by several. He was boisterous, was shouting, and was conducting an imaginary auction. He then drove upon the south approach to the old bridge. When his horse reached the washout or chasm extending across the roadway, being sober, he stopped and refused to proceed. Appellant

urged him by shouting and by slapping him with the lines until he sprang forward and cleared the chasm, taking the buggy with him. The shock of the buggy's plunge threw the appellant out, and he fell into the creek, receiving very severe and painful injuries. The injuries were of such a character that he suffered intensely for months, was compelled to submit to several very severe surgical operations, and will necessarily be a sufferer all the remainder of his life.

He was injured just about dark, but from the evidence it is plain that if he had been sober, when his horse stopped on the brink of the washout, he could and would have seen it and would have escaped injury. He was plainly visible to parties distant from him from 150 to 200 feet, and it was from that distance that men saw him fall and ran to his assistance.

On this state of facts, waiving all question as to whether or not the county could be held liable at all for injuries received by one in attempting to cross said bridge (a question upon which we intimate no opinion), it is clear that the appellant could not recover, and that the verdict of the jury was right.

To entitle him to recover from the county he was required to show that he was himself free from contributory negligence. When one, by reason of his own voluntary intoxication, exposes himself to danger and receives injuries which he could, and by the exercise of ordinary prudence would have avoided if sober, he is guilty of contributory negligence and can not recover for such injuries. In such case voluntary intoxication is in itself negligence.

It is not true as suggested by counsel at one place in the record, that a man has the right to become intoxicated, and in that condition travel along the public highways. The Legislature has declared that he who is found in a public place in a state of intoxication thereby commits a crime for which he may be fined and imprisoned. Section 2091, R. S. 1881.

From one stand-point, the appellant's condition appeals strongly to the sympathies. A vigorous man, in robust health, he was by this occurrence broken in constitution and made a life-long sufferer. If the facts were such as to make the county liable we would not have set aside a verdict awarding him most liberal damages. But the evidence, showing as it does, that his injuries are the result of his own voluntary surrender of his ability to see and guard against danger, he has no claim on the county for compensation, whether the county authorities had or had not fully acquitted themselves of the duty they owed the public.

Of the errors assigned and argued, we will only say that appellant complains of three questions which the court, over his objections, allowed a witness to answer. The questions and answers were competent, and the court did not err.

We think the court did err in certain instructions given, which is the only other error argued, and possibly in some refused, but from the facts clearly shown to exist in this case, the plaintiff can not recover, and the verdict is right. The ends of justice would not be subserved by requiring a re-trial of the issues.

Section 658, R. S. 1881, contains the following: "Nor shall any judgment be stayed or reversed, in whole or in part, when it shall appear to the court that the merits of the cause have been fairly tried and determined in the court below," and this court has many times decided that where the record affirmatively shows that the verdict is right upon the evidence the judgment will not be reversed because the court has erred in the instructions given to the jury. *Stockwell* v. *Brant*, 97 Ind. 474; *Simmon* v. *Larkin*, 82 Ind. 385; *Norris* v. *Casel*, 90 Ind. 143; *State, ex rel.*, v. *Ruhlman*, 111 Ind. 17; *Cassady* v. *Magher*, 85 Ind. 228; *Ledford* v. *Ledford* 95 Ind. 283; *Sanders* v. *Weelburg*, 107 Ind. 266.

Judgment affirmed, with costs.

Filed May 16, 1891.