The City of Lafayette *v.* Ashby.

GAVIN, C. J., absent.

Filed Nov. 7, 1893.

---

No. 834.

## THE CITY OF LAFAYETTE *v.* ASHBY.

MUNICIPAL CORPORATION.—*Personal Injury.*—*Defective Sidewalk.*—*Notice.*—*Liability for Act of Licensee.*—*Sufficiency of Complaint.*—*Theory of.*—In an action against a municipal corporation, for personal injuries sustained by tripping upon a guy wire which had been erected by an electric light company, licensed to use the street, extending from the top of a pole, across the street, and attached to a tree, the complaint is sufficient, on demurrer, which proceeds upon the theory that the defendant had notice, when the wire was stretched across the street, that it was fastened to a decayed and unsafe tree outside and beyond the street (such tree having been blown down, and such wire suspended but a few inches above the sidewalk about an hour before the accident complained of), and that, by the exercise of reasonable diligence, appellant might have known of the continuance (about nine months) of such unsafe attachment up to the time of the accident, and alleging want of contributory negligence.

VERDICT.—*Sustained by the Evidence.*—That the evidence is sufficient to sustain the verdict, see opinion.

INSTRUCTIONS TO JURY.—*Error in Giving and Refusal to Give.*—*Presumption of Harm.*—*Unsatisfactory Evidence.*—Where the evidence is so unsatisfactory on the vital points in the case as to render it extremely doubtful, in the mind of the court, whether the verdict was right, error in giving and refusal to give instructions will be presumed to have been harmful, and will work a reversal.

Concurring opinion by REINHARD, J.

Opinion on petition for rehearing, PER CURIAM.

From the Clinton Circuit Court.

*J. F. McHugh,* for appellant.

*J. R. Coffroth* and *W. R. Coffroth,* for appellee.

DAVIS, J.—This was an action to recover damages on account of personal injuries. The complaint was in two paragraphs, and separate demurrers to each paragraph were overruled. The answer was a general denial. As the result of a trial before a jury, judgment was rendered against appellant for two thousand dollars.

The errors assigned bring in review the rulings on the demurrer to each paragraph of the complaint, and also the overruling of appellant's motion for a new trial.

We will consider them in the order in which they are presented.

It is alleged, in substance, in the first paragraph of the complaint, that the Brush Electric Lighting Co., in January, 1888, erected, at the corner of certain streets in the city of Lafayette, as a part of its plant for lighting the streets of said city with electricity, a pole about ten inches in diameter and twenty feet in height, at the top of which it caused to be attached its electric lighting wires, and that, for the purpose of keeping said pole in position, said Brush company, "with the knowledge of said defendant," caused a guy wire to be attached to the top of said pole and stretched the same a distance of three hundred feet over, above, and beyond the street, and there "carelessly and negligently caused said guy wire, with the knowledge of said defendant, to be fastened and attached to an insecure and dead tree," and that said company carelessly and negligently continued to suffer and permit said wire to be stretched over said street and to remain fastened to said insecure, decayed and dead tree, and that said appellant might have known said facts by the exercise of reasonable diligence.

It is alleged that afterwards, on Friday, October 19, 1888, said decayed and dead tree, from its own weight and the strain of said guy wire, fell over and upon the ground, and thereby greatly loosened said guy wire,

"which was suffered to remain stretched across said street during said day, attached to said pole and fallen tree, at a distance of about eight inches above the sidewalk, and "that on the evening of said 19th day of October, 1888, at about the hour of six o'clock, the plaintiff, while passing over and along the sidewalk of said Fourteenth street, without knowledge of said fallen wire, and in the exercise of care, and without any fault or negligence on his part, was caught by said wire and thrown violently forward upon the sidewalk and into the gutter," and was injured "through the fault and negligence of the defendant aforesaid," etc.

The second paragraph is substantially the same as the first paragraph, except it charges that the Brush company did the acts complained of, without objection upon the part of the city, and that appellant, with full knowledge of all the facts, "suffered and permitted said wire to remain suspended over and across said Fourteenth street, well knowing that the wire was attached to said insecure tree, and was liable to fall and unlawfully obstruct said street;" and further, "That early in the day of Friday, October 19, 1888, said insecure, decayed and dead tree, from its own weight and the strain of said guy wire, fell over and upon the ground in the direction of said pole, and thereby greatly loosening said guy wire, and said guy wire, during said day, was, by the defendant, carelessly and negligently suffered to remain stretched upon and across said Fourteenth street," and that appellant had negligently permitted said street at said point to become and remain out of repair, and in a dangerous and unsafe condition, in this, that there was a hole in the gutter, etc.

It will be noticed that it is charged, in the first paragraph, that the guy wire was carelessly and negligently, with the knowledge of appellant, so fastened and attached

to said insecure, decayed, and dead tree, in January, and that said company carelessly and negligently continued to suffer and permit said wire to be stretched over and across said street and to remain fastened and attached to said insecure, decayed and dead tree until the ensuing October, when the accident occurred, and that the appellant might have known of such continuation of said wire by said company, by the exercise of reasonable diligence. And that, in the second paragraph, it is charged that the wire was so negligently attached to the insecure tree, with the knowledge of appellant, and that the alleged negligent continuation thereof was with such knowledge on part of appellant.

We have examined the authorities cited by counsel for the respective parties, and we call attention thereto.

"It is the duty of municipal corporations to keep all of their streets in a reasonably safe condition for travel, so as not to endanger the persons and property of those lawfully using them, and they are liable for negligently suffering them to become unsafe." *City of Aurora* v. *Bitner*, 100 Ind. 396.

This duty extends upwards indefinitely for the purpose of the preservation, safe use, and enjoyment of the street. *Grove* v. *City of Ft. Wayne*, 45 Ind. 429.

"Where a defective and unsafe condition of a street or sidewalk in a city is caused by the act or omission of a third person, and the city, *after due notice of the defect*, fails to have it remedied within a reasonable time, it is as much responsible for the injury caused thereby as if the defect had had its origin in the acts of the city itself, through its officers in charge of the streets, or otherwise." *City of Huntington* v. *Breen*, 77 Ind. 29.

(The italics in the quotations throughout this opinion are our own.)

It has been held that "the indirect and inferential

averments, that the highway, within the corporate limits of the city and where the wagon ran into the ditch, was carelessly and negligently permitted to be out of repair, and that the city had knowledge that it was so out of repair, fairly and plainly imply that the city had notice of the bad condition of the street when the plaintiff and his daughter were injured," but in that case the sufficiency of the complaint was not challenged by demurrer in the court below, and in conclusion of the above sentence the court said: "After verdict we will infer that the notice was in time to have enabled the city to repair the street if it had desired to do so." *City of Madison* v. *Baker*, 103 Ind. 41. See, also, *City of Michigan City* v. *Ballance*, 123 Ind. 334; *City of Logansport* v. *Justice*, 74 Ind. 378; *City of Indianapolis* v. *Murphy*, 91 Ind. 382.

In another case Judge ELLIOTT says: "Where the obstruction which causes the injury is not placed in the street by the city itself, *there must be actual notice*, or the obstruction must have remained in the street such a length of time as to make it the duty of the corporate authorities to take notice of its existence." *City of Warsaw* v. *Dunlap*, 112 Ind. 576; *Dooley* v. *Town of Sullivan*, 112 Ind. 451.

It is also settled that a general averment of negligence is sufficient to withstand a demurrer. *City of Anderson* v. *East*, 117 Ind. 126.

It will be noticed that it is not alleged in either paragraph that the obstruction was placed or remained in the street under such circumstances and for such length of time as to make it the duty of the corporate authorities to take notice of its existence, but the charge is that *appellant had notice when the wire* was stretched across the street that it was fastened to a decayed and unsafe tree outside of and beyond the street, and that by the exercise of reasonable diligence appellant might have known of the

continuance of such unsafe attachment thereafter up to the time of the accident.

It should be borne in mind that in this instance the work was not undertaken by the city, nor was it apparently dangerous in itself. It was proper to permit the streets to be used by the Brush company for the purpose of lighting the city with electricity. Aside from the alleged actual notice on part of appellant, that the wire when erected was attached to said unsafe tree, nothing is shown which would indicate that the wire was, or would likely become, an obstruction. The distinction which exists between a work undertaken by a municipal corporation itself and work undertaken by another should be kept in view.

Whatever our views of the question under consideration might have been as an original proposition, we are constrained under the decision of the Supreme Court to hold each paragraph of the complaint sufficient. The demurrer concedes the truth of the averments relative to notice, on the part of appellant, of the alleged negligence of the company in the erection of the wire, across the street, in the unsafe condition described in the complaint, and as the result of which negligence the injury occurred. With actual notice or knowledge of such negligence and carelessness of the company in fastening the wire to an insecure and decayed tree, in the unsafe manner described, it was the duty of appellant, under the authorities cited, to have given the subject proper attention, and to have exercised at least reasonable diligence in having the wire removed or safely secured, and suffering the continuation thereof for nine months, in the negligent and unsafe manner described, renders the appellant liable under the circumstances stated in the complaint.

There is evidence tending to show that on the afternoon of Friday, October 19th, 1888, there was a wind

and rain storm, during which the tree in question was blown down, and that as appellee was returning to his home, perhaps an hour thereafter, he fell over the wire and was injured. The testimony as to whether appellee fell or was injured, is, it is true, conflicting. In fact all the witnesses who saw the appellee on that occasion, except himself, say that he did not trip or fall, but that when he reached the wire he discovered it was there, and that the appellee, with the assistance of his neighbors, then and there cut and removed it. That the heavy wind blew the tree down does not seem to have been controverted, and that the wire was removed on the evening of the 19th appears to be conceded. In this connection we pause to remark that appellee concedes he said nothing to either his family or any one else on that evening concerning his fall or injury. The evidence is, however, in several respects contradictory, and where there is any evidence in the record favorable to appellee he is entitled to the benefit thereof, on this appeal, without reference to any conflict, and regardless of the weight of such evidence.

There is no allegation in the complaint that appellant suffered or permitted the wire to remain down or across the sidewalk an unreasonable length of time. In fact, there is no claim either in the complaint or evidence that appellant had any knowledge, prior to its removal, that the wire was down. Neither is it alleged that the defect in the street, mentioned in the second paragraph, was a proximate or contributing cause of appellee's injury. The theory of the appellee, on which the cause was tried in the court below, seems to have been, except as indicated in instructions, that said Brush company, *with knowledge of appellant*, negligently and carelessly attached the guy wire to a dead and insecure tree, and that therefore appellant was responsible for such negligence of said com-

pany, and should respond in damages for the injuries sustained by appellee in falling over the wire when down across the sidewalk on that evening.

Doctor Washburne, who was the family physician of appellee, and who treated him professionally, both before and after the alleged injury, testified, as a witness on the trial, in behalf of appellee, that he was, and for ten years had been, a member of the city council of Lafayette, and that the guy wire was fastened to a hickory tree in the commons. He states that he saw the tree while it was lying on the ground a day or two after the accident. He also testified that the tree was ten inches in diameter, and that it was green in both branches and body, "down to within just above the ground a piece," and that the tree bore hickory nuts the year before.

We quote the greater part of his testimony as follows:

"Were you present when the Brush Electric Lighting Company fastened its guy wire to this tree, running it from the pole to the tree?

"I was not.

"Do you know how long had this guy wire been run from this pole to this tree in question?

"I don't know.

"You may state, so far as you have any knowledge of its existence there, how long it had been before this 20th of October, 1888.

"I have no knowledge of the length of time; I don't know anything at all about it.

"You practice medicine a good deal all over that part of the city, don't you?

"I am over that part of the city quite often; yes, sir.

"And in passing along you had noticed the wire running from the pole to this tree, had you?

"I had observed the wire; yes, sir.

"How long, now, before the time this accident is alleged to have occurred had it been since you observed it?

"I couldn't say.

"State whether or not it was for a considerable time or only a short time?

"I couldn't say the period of time, but it was before this accident or the tree blew down.

"Well, was it several years or several months, or what was it?

"I remember seeing this wire attached to the tree, and that is all I can say. As regards the period of time prior to the time the tree blew down, I don't know.

"It was sometime before, was it?

"Sometime before that; how long I wouldn't undertake to say.

"Can you state whether it was two or three months before?

"Yes, it was two months before; how much longer I don't know."

He also testified that a fire had been built on one side of the tree several years before by his son, and that one-half of it had been burnt off, but whether he noticed this fact prior to accident is not clear, and that the inside of the tree was dead and decayed and the outside was apparently green, at the time of the accident.

Other witnesses testified that fires had been built at and around said tree several times after the wire was fastened thereto, and prior to the time it blew down.

As to when and under what circumstances Doctor Washburne observed the condition of the tree prior to the alleged accident does not appear, except as indicated in his testimony, to which reference has been made. It appears, however, that he had seen the tree and knew a fire had been built there several years before, and that one side of the tree was burned; that the tree bore hick-

ory nuts the year before, and that "the body of the tree was green (and the branches were green), with the exception of down close to the ground," and that he knew the guy wire was fastened thereto, but it is not shown, except inferentially, that he knew at any time prior to the accident that the tree was insecure or decayed, except the burn near the ground.

In fact we have referred to the sole and only evidence, to which our attention has been called, or which we have observed, tending to show any knowledge on the part of appellant, in relation to the fastening of the guy wire to the tree, or of its continuance prior to the 19th of October, 1888, and there is no evidence whatever in the record, tending to prove that the city had any knowledge, at any time, of the condition of the tree, except the testimony of Doctor Washburne.

It is insisted "that appellee has wholly failed to show that there is a particle of evidence to sustain the very essential fact that the city knew, *at the time the guy wire was attached to the tree,* that the tree was dead, decayed and rotten. This is the basis of both paragraphs of the complaint."

It is conceded that there is a variance between the allegations and the proof, in this, that the evidence fails to show that appellant had such knowledge "at the *very time* it was so fastened."

It is insisted, however, by counsel for appellee, that under all the surrounding circumstances disclosed by the evidence, appellant had constructive knowledge of the alleged negligence of the company and unsafe condition of the wire, a sufficient length of time to have remedied the defect as to the street, before the happening of appellee's injuries. In this view we can not concur. The tree was on the commons, which belonged to private parties, and was some distance from the street. There was

nothing in the appearance of the wire to indicate that it was in any manner unsafe. In the absence of actual knowledge or notice as to the condition of the tree, it does not appear that anything could be observed from the street, indicating that it was rotten or unsafe.

The variance referred to, however, will not justify a reversal of the judgment of the trial court, if, as insisted by counsel for appellee, the evidence fairly tends to prove *such actual knowledge* on the part of appellant, as to the alleged negligence of the company and the unsafe condition of the wire for such period prior to the accident as would have given appellant a reasonable time in which to have taken the necessary steps to remove or safely secure the wire. *Steinke* v. *Bentley*, 6 Ind. App. 663.

The evidence relative to such notice or knowledge on the part of appellant, and, also, in reference to other material points in the case, is not satisfactory, but there was evidence tending to show that Dr. Washburne knew the tree had been burned, at least partly away, several years prior to the time in question, and that one end of the guy wire was fastened to the tree at least two months prior to the accident. In view of all the facts and circumstances which appear in the record, we can not say there was an entire failure of proof on this proposition, or as to the alleged injury. There was no evidence in support of the allegation in relation to the hole in the gutter, or that the tree fell from its own weight and the strain of said guy wire.

Complaint is made of the third instruction given by the court at request of appellee, in substance and to the effect that if the city knew the sidewalk was obstructed a reasonable time before the happening of the injury, the city was liable for the injury occasioned by such obstruction. There was no evidence whatever tending to show that appellant, prior to the alleged injury, had any knowl-

edge of the fact that the wire was down or across the sidewalk. The instruction was not applicable to either the issues or the evidence.

The same objection is urged to the fourth instruction, but it is insisted, by counsel for appellee, that "if they were not relevant, as counsel contend, the giving of them is no cause for reversal, for the reason that it clearly appears that no harm could have resulted to appellant therefrom."

When the evidence clearly justifies the verdict, and it appears to the Appellate Court that the merits of the cause have been fairly tried and determined in the court below, the giving of irrelevant and erroneous instructions, where it is clear that such instructions have done no injury, constitutes harmless error, for which the judgment of the trial court will not be reversed. Section 658, R. S. 1881. *Felkner* v. *Scarlet*, 29 Ind. 154; *Garrigan* v. *Dickey*, 1 Ind. App. 421.

Absolute accuracy and perfection can not be obtained, ordinarily, in all the stages of an important trial. It is, therefore, not enough to reverse a judgment, that the court below committed some error in the course of a cause. Errors which have no effect on the verdict occur in the proceedings and trial of almost every cause before a jury. Appellate courts are not created to either reverse or affirm judgments, but are organized and maintained as a part of the judicial system, the administration of which is intended and calculated to secure to parties involved in litigation their substantial rights, freely and without purchase, completely and without denial, speedily and without delay, but where error is shown to have occurred in the trial court which it appears was probably prejudicial to appellant, it is the duty of the Appellate Court to reverse the judgment. Practically, more or less delay

in judicial proceedings is unavoidable, and, moreover, correct results can not always be secured. Notwith-standing painstaking investigation and careful consid-eration, unimportant errors will occasionally be deemed prejudicial, and now and then hurtful rulings may be considered harmless. There is not so much uncertainty in the general principles of the law or the rules of prac-tice, but the difficulty in the practical enforcement of these principles and rules in and by an Appellate Court oftentimes is in determining what errors in the trial court were probably influential on the result. So it is in this case. For instance, in the fourth instruction re-ferred to, without any reference to whether the obstruc-tion had remained in the street under such circumstances and for such length of time as to make it the duty of the city to take notice of the existence thereof, the jury were told that appellant was liable if the city, ''by the use of ordinary and reasonable diligence, might have known of such obstruction a reasonable time before the occurrence of said alleged injury.'' Whatever may be said con-cerning the instruction, it certainly was not pertinent to any issue in the case. Whether the instruction had any effect on the result, prejudicial to appellant, the court can not say. We can only theorize, speculate and in-dulge in presumptions and probabilities in relation thereto. The rule is that instructions of the court must be applicable to the issues. *Myers* v. *Moore,* 3 Ind. App. 226 (227).

Counsel for appellant insist that the court erred in re-fusing to give to the jury instructions numbered six, seven, and ten, asked by defendant.

The substance of the tenth instruction was that the jury, in determining the weight and credibility of the appellee's testimony in relation to whether he tripped and fell over the wire, as claimed by him, had the right

to take into consideration his conduct immediately following the alleged accident, together with the other evidence in the case.

It is contended by counsel for appellee that the use of the word "duty" in the instruction, in this connection, namely, "it is your duty to look into his conduct," etc., renders the instruction improper. *Unruh* v. *State, ex rel.,* 105 Ind. 117.

Under the facts and circumstances disclosed by the evidence in this case, the reasoning in the case last above cited is not applicable, and does not sustain the objection urged to the instruction in question. *Robertson* v. *Monroe,* 7 Ind. App. 470, and authorities there cited.

In our opinion, the instruction was a proper one to have been given to the jury. It correctly states the law applicable to the evidence on that branch of the case. It does not necessarily follow, however, that the refusal to give such correct and pertinent instruction constitutes reversible error.

The fifth, sixth, and seventh instructions asked by appellant are as follows:

"5. If you find from the evidence, that the tree to which said guy wire was attached was rendered insecure by reason of its having been set fire to sometime after the guy wire had been attached to it, then I instruct you that the plaintiff can not recover unless the defendant had knowledge or notice of such insecurity of said tree, or unless such insecurity had existed for such a length of time before the alleged accident that the city authorities, under the circumstances disclosed in the evidence, by the exercise of reasonable care, should have known of its existence.

"6. If you find from the evidence that the tree to which the guy wire is alleged to have been attached was rendered insecure by reason of fires having been made

against it after the time said tree was observed by the witness Washburne, and that prior thereto said tree was a reasonably secure tree to which to attach a guy wire for the purposes alleged in the complaint, then I instruct you that knowledge on the part of the witness Washburne of the prior condition of said tree would not, alone, amount to a knowledge or a notice on the part of the defendant of the insecurity of said tree at the time of the alleged accident.

"7. In determining the question whether the defendant should have had notice of the insecurity of said tree to which said guy wire was attached, prior to the alleged accident, you should take into consideration, with the other evidence in the cause, the distance of said tree from a public street, the character, location and visibility of the defect or burn, if any, which rendered said tree insecure, and the likelihood of its having been observed by any of the city authorities prior to the alleged accident."

In the language of NIBLACK, C. J.: "As applicable to the facts of this case," we see no objection to the sixth instruction. *Wiseman* v. *Wiseman*, 89 Ind. 479 (483).

The fifth instruction, which was given, does not embrace all of the material and pertinent parts of the sixth instruction, which was refused. In view of the fact that there were no circumstances, aside from the knowledge of Dr. Washburne, in regard to the condition of the tree, tending to show that appellant might have known of the insecure condition of the wire, prior to the accident, the fifth instruction, to say the least of it, stated the law, under the issues and the evidence, on the proposition contained in the conclusion thereof, fully as favorable as appellee was entitled to. If, in fact, the tree was rendered unsafe by reason of the burning thereof after the time Dr. Washburne observed it, the sixth in-

struction should have been given in connection with the other instructions.

The seventh instruction was also refused.

The general statement of an abstract legal rule, although accurately stated, can not, in all cases, be properly embodied in an instruction. A party, however, has a right to have specific instructions applying to the facts of the particular case as developed by the evidence. *Unruh* v. *State, ex rel., supra; Hipes* v. *State,* 73 Ind. 39; Elliott's App. Proced., section 706.

The theory of each paragraph of the complaint was that the wire was originally negligently attached, by said Brush company, to the decayed and insecure tree, *with the knowledge* of appellant, but the instructions given by the court at the request of appellee were in substance and to the effect that (without any knowledge on the part of appellant either in relation to the original insecure attachment or to the continuation thereof in an unsafe condition), the appellant was liable, "if, by the exercise of ordinary or reasonable diligence," the city might have known of such negligence, on the part of the company, several months before the happening of the accident in question.

It is true, as contended by counsel for appellant, that a complaint must proceed on a single definite and distinct theory. *First Nat'l Bank, etc.,* v. *Root,* 107 Ind. 224. And that the instructions must be applicable thereto. *Myers* v. *Moore, supra.*

These rules should be construed and applied in the spirit which underlies the code. Sections 391, 392, 393, R. S. 1881.

But conceding, without deciding, that the instructions so given by the court, at request of appellee, to the jury, relative to constructive notice on the part of the appellant of the alleged negligence of said company, correctly

state the law applicable to the case, then the seventh instruction asked by appellant under the circumstances of this case should have been given.

It is not necessary to decide whether, if appellee's instructions, of which complaint is made, had not been given, or if appellant's instructions which were refused had been given along with them, or whether if all of the instructions in question had been refused, there would have been, in any such event, reversible error in the record. It is sufficient to say that in the view we have taken of the case, any one of the errors which we have hereinbefore mentioned, standing alone, may have been harmless, but when the entire case, as presented by the record, is examined and considered as a whole, we can not say it appears "to the court that the merits have been fairly tried and determined in the court below," or that the errors referred to do "not affect the substantial rights" of appellant. Sections 398, 658, R. S. 1881; Elliott's App. Proced., sections 594, 632.

This case does not come within the rule that where the record affirmatively shows that the verdict is right upon the evidence the judgment will not be reversed because the court erred in the instructions given to the jury, or for error in refusing to give instructions. *Woods* v. *Board, etc.*, 128 Ind. 289 (292).

An appellate court, in the light of the observation and experience of *nisi prius* courts and of the members of the profession who have had an extensive and long continued practice in the trial of causes before juries, may, and ordinarily will, assume that the giving of merely irrelevant or slightly inaccurate instructions do not have any controlling influence on the result, and therefore the presumption in such cases is that a just conclusion was reached in the trial court (and this rule may apply in some case where the instructions are more radically er-

roneous, and also where correct and pertinent instructions are refused), but where the evidence is so unsatisfactory on the vital points in the case as to render it extremely doubtful, in the mind of the court, whether the verdict was right, while it is true the court will not weigh the evidence, it will, where there is such error in the record as is shown to exist in this case, proceed on the theory that the errors were hurtful.

In this case the record discloses, in the opinion of the court, under the facts and circumstances to which we have called attention, such prejudicial error in the giving and refusing of instructions, on account of which, for the reasons indicated, the judgment of the court below is reversed, with instructions to grant a new trial.

Filed May 23, 1893.

## CONCURRING OPINION.

REINHARD, J.—I concur in the result, but think the judgment ought to be reversed on the evidence also. In my judgment, there is no evidence tending to show any knowledge of the unsafe condition of the tree. It is not shown at what particular time Dr. Washburne discovered that the tree had been scorched, nor does it appear that he knew the extent to which it had been injured. It was the duty of the appellee to prove knowledge of the defective condition, in the city.

Filed May 23, 1893.

## ON PETITION FOR A REHEARING.

PER CURIAM.—Counsel for appellant has filed a petition for a rehearing, in which he urges that the justice of the cause requires that it should be remanded with instructions to the court below to render judgment for appellant. Section 660, R. S. 1881; 2 Works' Practice, p. 138.

The majority of the court is of the opinion that there was some evidence at least in support of the verdict on every material point in issue. The jury were the exclusive judges of the credibility and weight of the evidence, and, therefore, the court would not reverse the judgment of the court below because of the insufficiency of the evidence to sustain the verdict, with instructions to render judgment for appellant.

Counsel for appellee earnestly insist that a rehearing should be granted on the ground that the errors in giving and the refusal to give the instructions, as stated in the original opinion, were harmless.

In this contention, the majority of the court do not agree with counsel. The court is not able to say, in this case, that the record so clearly and affirmatively shows that the verdict is right upon the evidence as to render the errors referred to in the original opinion harmless.

Each of the petitions for a rehearing is therefore overruled.

Filed Nov. 24, 1893.