Davis, J.
This was an action by an employe against his employer for personal injuries alleged to have been sustained in the course of his employment. It was tried by a jury four times in the Morgau Circuit Court. The *120 first verdict was set aside by Judge Grubbs. It was next tried before the Hon. John V. Hadley, who set aside the second verdict returned in favor of appellee. The Hon. Henry C. Duncan, a practicing attorney, was then appointed special judge to preside in the cause. The first trial before him resulted in a disagreement of the jury. On the second trial before Judge Duncan a verdict was returned in favor of appellee for $1,500.
Over a motion for a new trial, as well as other motions made in the cause, judgment was rendered upon this verdict. Exceptions were duly reserved to various rulings of the trial judge, and this appeal is prosecuted from the judgment so rendered.
Several assignments of error are made. The complaint upon which the judgment appealed from was rendered is in two paragraphs. The assignments of error with respect to these are:
1st. That the court erred in overruling a demurrer by the appellant to the entire complaint.
2d. That the court erred in overruling a demurrer by the appellant to the first paragraph of the complaint.
3d. That the court erred in overruling a like demurrer to the second paragraph of the complaint.
4th. That the complaint does not state facts sufficient to constitute a cause of action.
These assignments may be considered together. The first paragraph of the complaint was filed in the Owen Circuit Court, from which the venue was subsequently changed to the Morgan Circuit Court. This first paragraph avers in substance that the appellee was in the employ of the appellant which was engaged in the business of quarrying and dressing stone in Owen county, Indiana; that appellee as such employe was engaged in this work; that his particular employment was in connection with the operation of a planer used to plane *121 stones of large dimensions; that said planer was a machine operated by steam power, and consisting in part of a crosshead which carried certain bits made of iron and steel, and which were brought in contact with the stone to be planed, and made the surfaces thereof smooth; this-crosshead -weighed 16,000 pounds; that it was necessary in the prosecution of the work to occasionally raise and lower the crosshead in which these bits were placed; that it was so raised and lowered, when the machinery was in proper condition, by means of a large wooden pulley placed above .it, around which ran a lárge belt, which also ran upon a smaller pulley attached to the planer below; that when this belt was of proper strength and tension, and the pulleys in proper position the crosshead was easily raised and lowered by means thereof without danger to employes operating the planer; that prior to the 20th day of February, 1890, the belt and pulleys had, from improper adjustment, long continued use and wear, become out of repair, worn and insufficient to raise and lower the crosshead, whereby the machine became unsafe and dangerous to employes operating it; that by reason of the defective condition of the machine, as the result of said defects, it became necessary, in order to operate said machine, for employes, while hoisting and raising the crosshead, to stand in front of the belt and press upon it with great force with an iron rod held in the hand in order to increase its tension and make it lift the crosshead; that appellee, for several weeks prior to said 20th day of February, had been employed as an assistant in the operation of this planer, and that said machine gradually failed, from said defects, to perform its functions, and as the belt failed to raise the crosshead, he from time to time notified the appellant company of its impaired and dangerous condition, and that the appellant company, in each *122 and every instance, promised to repair and put the. same in proper condition, but negligently, carelessly and without excuse failed and neglected so to do; that appellee, relying upon these promises and assurances, and believing that the. machinery would be repaired and rendered safe, continued in the employment and in the performance of the hazardous duties-mentioned, for several weeks prior to said 20th day of February; and that upon said day, while engaged in the line of his employment and in the operation and management of the planer, under the direction of appellant’s managers and superintendents, and without any carelessness, default or negligence on his part, and while in the exercise of proper caution, and owing wholly to the defective condition of said machinery as above alleged, appellee’s right hand was caught in said belting and pulleys and crushed, lacerated and otherwise injured, that such injury was permanent, and caused great suffering.
Judgment for $10,000 is asked.
The first trial of the cause was upon this paragraph of the complaint; but before the second trial a second and additional paragraph was filed. This paragraph contains the same allegations as the first with reference to the appellant corporation and the business in which it was engaged, and also with respect to the kind of machinery by which such business was carried on, and then proceeds to allege that while the plaintiff was engaged as a helper upon the planer, he was caught in the belts, pulleys and wheels of the machinery while they were running at great speed, and was thereby greatly injured; that his injury occurred solely as the result of the dangerous, defective and unsafe condition of said machinery, which had, by improper adjustment of its pulleys, shafts, belts and the machinery used in turning the power on and off the same, and by becoming worn, weak and out of *123 repair, become unsafe and dangerous to employes engaged in the performance of their duties; that this dangerous, defective and unsafe condition of the machinery was well known to the appellant company, and that it had frequently promised to repair and readjust the same so that it would safely and properly perform its functions; that the appellant carelessly, negligently and without any excuse failed to make such repairs, but with full knowledge of its defective condition negligently permitted the same to remain out of repair; that appellee, relying upon the said promises, continued in the employment to the day of his injury, and while exercising due care, and without any fault or negligence on his part, but as a result of the dangerous and defective condition of the machinery, he was caught therein and injured.
There are similar averments as to the extent of the injury, pain resulting therefrom, etc., as those in the first paragraph of the complaint, and the damages demanded are $5,000.
To the first paragraph of the complaint, while it stood as the only complaint in the action, a demurrer for the want of facts was filed and overruled. Asimilar demurrer was filed to the second additional paragraph and also overruled and proper exception reserved.
Counsel for appellant contend that the first paragraph of the complaint under consideration does not aver negligence on the part of the appellant occasioning appellee’s injury.
This is the only point suggested or discussed as to the sufficiency of the complaint. No question is raised in argument on this branch of the case in relation to contributory negligence or assumption of the risk on the part of appellee. It is conceded, at least the proposition is not controverted, that the first paragraph of the complaint is sufficient if it charges actionable negligence om *124 the part of appellant as the proximate cause of appellee’s injury. The substance of the argument is that the defective and dangerous condition of the machinery at the time of the accident is not shown to have been due to negligence of appellant. Counsel say “that it does not follow as a matter of law that defendant was guilty of negligence simply because it had this machinery.”
The infirmity in the argument is the fact that it appears from the allegations in the first paragraph of the complaint that the defects which created the unsafe and dangerous condition arose out of the long continued use and wear, and improper adjustment of the machinery by appellant, and that the appellant had due notice and knowledge of such defects, and the consequent unsafe and dangerous condition thereof, for several weeks prior to the accident, and that appellant negligently, carelessly, and without excuse, failed to make the necessary repairs and put the machinery in proper condition.
It is the duty of the master to exercise reasonable and ordinary care in providing reasonably suitable machinery and appliances to enable the employe to do his work as safely as the hazards incident to the business will permit. If the master fails in this duty he is responsible for any injury which may happen to the employe through defects in the machinery which were known to him, which it was his duty to repair, except where the employe has assumed the risk incident to the use of such defective machinery, or has contributed to the injury by his own negligence. Indiana Car Co. v. Parker, 100 Ind. 181; Rogers v. Leyden, 127 Ind. 51; Indianapolis Union R. W. Co. v. Ott, 11 Ind. App. 564; Indianapolis, etc., R. W. Co. v. Watson, 114 Ind. 20.
It is charged, in substance, that the company provided the stone planer for the work in which it was engaged; that when the machinery was kept in proper condition, *125 the planer could be safely used; that the company permitted the machinery (the planer) to become worn, weak, out of repair, dangerous, and defective, and that the company had actual knowledge of the defective and dangerous condition for several weeks prior to the injury, and negligently failed to make the necessary repairs.
The facts alleged, the truth of which the demurrer admits, show that the master was guilty of negligence in failing in the discharge of his duty to keep the machinery in question in proper repair, and in safe working order. It was negligence on the part of appellant to continue to use and operate unsafe and dangerous machinery with knowledge of the defects and dangers incident thereto under the facts and circumstances alleged in -the complaint. It is conceded, if the first paragraph of the complaint states a good cause of action, that the second paragraph is sufficient.
The next error assigned is the overruling of appellant’s motion for judgment on the answers of the jury to the interrogatories.
The jury returned a general verdict in favor of the appellee. They also returned answers to interrogatories propounded by each of the parties.
In answer to the interrogatories, the jury found that appellee was injured while engaged as a helper in the line of his duty in operating a stone planer in the quarry of appellant; that he received said injury because the planer was defective and out of repair; that appellant had been notified that said planer was out of order, and would not work properly before appellee was injured; that he was required by appellant to perform the service he was engaged in doing when he was hurt; that appellant promised appellee before he received his injury to repair the planer; that he was induced by such promise, and the promise to relieve him from service on the *126 planer soon, and give him other work in the quarry, to continue in appellant’s service in the use of the planer; that his hand was drawn between the pulley and the belt by the rivets or lacing, hitting the rod and knocking his hand down; that immediately before the accident he was holding his hand from twelve to fifteen inches above, and forward of, the pulleys; that at the time of his injury appellee could see the belt and pulley, and that he understood the manner in which they operated well enough to know that he would be hurt if his hand was drawn between them; that it was not necessary for appellee to do anything more than to give attention to where Ire was putting his hands, and what he held in them to avoid getting his hands caught and drawn between the pulley and the belt; that appellee was using reasonable care to avoid his injury at the time he was injured.
In discussing the assignment under consideration, counsel for appellant say: “The whole, dispute has been, and is now, as to whether this injury happened by any negligence of the appellant, and as to whether the appellee was free from contributory negligence.” In this-action it was necessary for three things to appear, aS' contended by counsel, before appellee could recover, namely, that he was injured; that his injury happened by the negligence of the appellant, and that he himself was free from contributory fault.
This being true, if the findings of the jury upon the special interrogatories show affirmatively that either of these three essential facts does not exist, then there should be a judgment against the appellee. That appellee was injured, ánd that his injury was caused by the negligence of appellant is not controverted by the special findings of the jury. On this branch of the case, the argument of counsel for appellant is confined to the proposition that the answers of the jury to the inter *127 rogatories show that negligence on the part of appellee contributed to his injury. In this connection counsel for appellant say that the only effect of the promise to repair the planer was “to excuse appellee for continuing in the employment.” In other words, the promise of appellant to repair the planer removed all ground for the argument that appellee by continuing in the employment, under the circumstances, assumed the risks of the dangers incurred by the use of the defective and unsafe machinery. Indianapolis Union R. W. Co. v. Ott, supra.
The only question, therefore, that we are required to determine under the assignment we are considering is whether the answers to the interrogatories disclose such a state of facts as will excuse appellant on the ground of contributory negligence on the part of appellee.
It should be borne in mind that the jury by their general verdict have presumably found every material allegation of the complaint to have been proven, and that conclusion conclusively prevails in this court unless the contrary is clearly shown by the answers to the interrogatories. Such answers will not be aided by intendment. The special findings override the general verdict only when both can not stand, and this antagonism must be apparent upon the face of the record beyond the possibility of being removed by any evidence legitimately admissible under the issues, before the court can be successfully called upon to direct judgment in favor of the party against whom a general verdict has been rendered. Lake Erie, etc., R. R. Co. v. McHenry, 10 Ind. App. 525; Kentucky and Indiana Bridge Co. v. McKinney, 9 Ind. App. 213; Indianapolis Union R. W. Co. v. Ott, supra.
If the answer to the interrogatory in which the jury find that appellee was in the exercise of ordinary care *128 should be disregarded, the fact still remains that the general verdict includes a finding that he was, when he was injured, in the “exercise of ordinary care and free from fault. Now, in view of the rule of law applicable in such cases, does the conclusion necessarily follow that because appellee could see the belt and pulley at the time of his injury and understood the manner in which they operated, well enough to know that he would be hurt if his hand was drawn in between them, and that it was not necessary for him to do anything more than to give attention to where he was putting his hands and what he held in them to avoid getting his hand caught and drawn in between the pulley and belt, he is chargeable with negligence contributing to his injury.
In this connection it should also be remembered that if under all the circumstances, and in view of the promise to remedy the defect, the appellee was not wanting in due care in continuing to use the defective and dangerous machinery, or the manner in which he used the same, then the appellant will not be excused for the omission to supply proper and safe machinery on the ground of contributory negligence. If the danger on account of the use of the defective machinery was not of •so grave a character that it would deter a reasonably prudent man from incurring it, and if in the line of his duty appellee used care commensurate with the danger, he was not guilty, per se, of contributory negligence. Indianapolis Union R. W. Co. v. Ott, supra.
If the facts and circumstances which might have been proven under the allegations in the complaint are such that the answers of the jury to the interrogatories, when construed in connection with such facts and circumstances, lead inevitably to but one conclusion, and that the conclusion of contributory negligence on the part of appellee on this occasion, then appellant was entitled to *129 judgment on the answers to the interrogatories, notwithstanding the general verdict. Conceding that attention is synonymous with care and that all it was necessary for appellee to do to avoid getting his hand caught and drawn in between the pulley and the belt was to give attention to where he was putting his hands and what he had in them, the finding is not equivalent to saying that in the performafice of the work he was doing in and about the defective and dangerous machinery, under the direction of the master, when he was injured he could, in the exercise of care commensurate with the known danger, have given such attention to where he was putting his hands and what he had in them as would have avoided getting his hand caught and drawn in between the pulley and the belt. In order to successfully perform the task which he was doing when he was injured, it may have been necessary, in the position in which he was- placed, in the exercise of care commensurate with the danger incident to the use of such defective and dangerous -machinery, for him to divert his attention, temporarily at least, from where he was putting his hands and what he had in them. The master, notwithstanding the unsafe and dangerous condition of the machinery and his promise to repair the same, had the right to expect that appellee should give care and attention commensurate with the known danger, to the performance of the work he was doing, but we can not say, -as a matter of law, in view of all the facts and circumstances which may have been shown under the issues on the trial, that he was in such fault as to render him guilty of contributory negligence simply because all that it was necessary for him to do to avoid the injury was to give attention to where he was putting his hands and what he had in them. If he had not attempted to per *130 form the duty in which he was engaged he would not have been injured, but the fact that he undertook to do the work does not necessarily constitute contributory negligence. It may not have been consistent with the strength and attention necessary to execute the task he was assigned to do to have given the attention referred to in the interrogatory, to where he was putting his hands and what he had in them. The jury evidently made a discrimination between attention to where he Avas putting his hands and Avhat he had in them and care in doing the act Avhich caused his injury, and whether such discrimination is one founded in fact we can not determine on the answers of the jury to the interrogatories, in view of the issues and the general verdict.
The next assignment of error is the overruling of a motion for a new trial. Among other reasons stated for a new trial are that the verdict is contrary to the law, contrary to the evidence, and not sustained by sufficient evidence.
These reasons have been discussed and may be considered together.
There is evidence in the record tending to prove the following facts: Appellee, when he was injured, was thirty years of age. In August or September prior to his injury in February, he was taken off the stone-cutters’ yard, where he had been employed for sometime, to work on the planer for a feAV days until they could get a man for the work from Bedford, but he was kept continuously at work on the planer until he was hurt.- When he went to work on the planer the belts raised and loAyered the crosshead in a proper manner. In the course of a month or two the belts became so loose that they would not raise or lower the crosshead unless the employes operating the planer got up above the planer on top of an arch or beam eight or ten feet from *131 the ground and put pressure on the belt with a stick, iron rod or hook. This was often done by appellee— some days several times—under the direction of the head workman or superintendent, for two months or more before he was injured. He generally used for this purpose an iron hook that they raked spawls off the bed of the stone with. It was a half round hoop iron, fiat on one side and round on the other, two feet long, with a hook in the end. The pressure was made by putting the stick, rod or hook against the belt and bearing down, and this pressure would put the proper tension on the belt, thus giving it greater power on the pulley, and in this manner, through the other necessary appliances, raised or lowered the crosshead to the desired position. After the machinery got in a fix so it would not raise and lower this crosshead, and appellee was put to aiding it, as herein indicated, he often asked the superintendent “if he would not fix it,” and he replied, “We will fix it,” but the belts were not changed, new ones were not put in, and the machine was not fixed. Appellee relied on the continued promises to fix it. He says his request to have it fixed was because it was an unhandy place to go; that it was inconvenient to get up there, but that he never thought there was any danger in going up there and putting the pressure on the belt, and, in his opinion, this method of raising the crosshead was safe. On this occasion they shifted the straight belt over on the tight pulley to raise the crosshead. Appellee put the pressure on the belt with the hook to raise the cross-head, and it would not raise.
In describing the manner in which appellee was injured, he says:
“How, at the time you were hurt what were you doing? I was working on the planer, and they wanted to raise the crosshead, and I got up with the iron hook.
*132 “Who told you to get up? Mr. Bruce.
“Were you subject to his orders? Yes, sir.
“State what you did. I got up with my hook to put pressure on the belt to raise the crosshead.
“Where did you go? Right up in front of the three little pulleys on top of the arch, on top of the planer.
“How high were you from the ground? Eight or ten feet.
“Was there any other place you could go to do that work there? No; no place up near the top.
“That was the only place to go? Yes, sir.
“Well, now, when you got up there what did you do? We shifted the belt oyer.
“How did you do that? Bruce shifted, the straight belt oyer on the tight pulley to raise the crosshead, and it would not raise.
“Why would not it? It would not raise with the pressure on it. The pulleys were greasy, we oiled them, and I hollowed down to Bruce to throw me up a piece of waste to wipe the pulley off, and that maybe it would go, and he threw me up a piece of waste, and he shifted the belt back on the loose pulley, and that left the tight pulley without the belt on it, and I wiped it off, and he shifted it back, and I got caught before he shifted it back.”
In giving the particulars he says:
“I got the hook and held on each end of the hook.
“2. Illustrate how you handled it? Just like that (illustrating), had both hands, one hand on each end, and had it coming like that (indicating) on the belt to help climb over off the loose pulley on the tight pulley, and it hit the lacing or rivet or something on the belt * ’* *
“Explain fully to the jury how your hand got into the pulley-:—what position? I was like this (indicating), *133 and the belt was coming down to me, the straight belt running towards me, and when I- put this rod on the belt, it hit the rivet or lacing, and knocked my hand between the belt and the loose pulley, and it stopped the-pulley, and the belt kept going, etc.”
"He further says if the belt was a little slack sometimes the shifter would shift the belt, and sometimes it would not, and that on this occasion he put the ‘hook against the belt coming to make it climb’ on the tight pulley.”
The superintendent testified that the belts would become stretched so they would not raise the crosshead, and that they had been tightened frequently, and that they were made tight enough to raise the crosshead, and that when they became loose they were not always tightened at once for want of time, and they then "would tighten them with a stick,” and that he did not think there was any danger in tightening them temporarily with a stick or rod. There was evidence tending to prove that it was customary for the man who ran the planer, the first man, with the assistance of the helper, to tighten the belts by cutting off the ends, punch new holes, and lace them up again, but so far as shown this was never done during appellee’s service prior to his injury. It does not appear that appellee had any notice of this custom. The evidence tends to prove that when appellee complained to the superintendent of the defect, he promised to fix it. „
Appellee further testified:
"You say the whole trouble in this case grew out of the fact that the shifter would not shift the belt? Yes, sir.
"Otherwise you would not have been touching the belt at all? It would not climb. I would not have been touching it on the loose pulley. * * *
*134 c‘You had to do that because the shifter would not shift it readily, and you were hurt? Yes, sir.’'
Also, that the belt sometimes refused to go easily off the loose pulley on to the tight pulley, and that it was then necessary to aid it in the way of the application of pressure—the coming ab'ove indicated.
On the third of May, after appellee was injured, he returned to work for appellant and ran the big planer on which he was hurt, until the 18th of- August. It was during all this time in the condition it was in when he was hurt and worked in the same way. The employes continued during that time to go' up and assist the belts and work the shifters as they had done at and before the time appellee was injured.
Appellee appears to have been of the opinion, prior to his injury, that there was no danger on account of the defects. Whether this was his opinion afterwards does not appear, except it is shown that after his injury he never assisted in tightening the belts or helping the shifters. This work was done by other employes. With full knowledge of the defects and experience in the work, his opinion was, in our opinion, entitled to great weight on the question that there was no danger on account of the defects, but his opinion was not conclusive on the jury.
In view of the defects, the situation described in the evidence, all the attendant circumstances and the inferences fairly deducible therefrom, and the fact that except for the defect the accident in question could not have occurred, it was for the jury to determine whether the defects created or increased the danger.
It is true there was ample evidence tending to prove that appellee was, when he was injured, doing work that was safe if done with reasonable care at a place where he was not exposed to great danger if he .was giving at *135 tention to what he was doing, and that all the parties, employer and employes, conversant with the situation, believed that there was no increased danger in doing this work. The appellee appears to have had full knowledge of the situation and to have been as capable of judging of the danger incident to the work in which he was engaged as anybody.
Where it is shown in such case that the machinery has become defective, which defect the employer has promised to remedy or repair, and an employe who continues in the service in reliance on such promise is injured by reason of such defect it is ordinarily a question for determination by the jury whether such defect increased the danger, and whether the appellee was in the exercise of due care. The opinion or belief of the employe that the work might be done with safety, notwithstanding the defect, is not always conclusive on the jury, on the question whether there was any danger or increase of danger on account of such defect.
Where there is a defect in the machinery increasing the danger of the employe, of which defect he complains to the employer and the employer promises to repair the defect, on which promise the employe relies and continues in the employment, he is, for ■& reasonable time, absolved from the assumption of the risks of such service growing out of the defects, but it is the duty of the employe to use such additional care in proportion to the increased and known dangers as a man of ordinary prudence ought to exercise under the circumstances.
It was essential to a recovery by appellee, to prove that appellant was guilty of negligence, and that such négligence on the part of appellant was the proximate cause of the injury sustained by him, and that appellee was free from fault contributing thereto.
The evidence is not clear and satisfactory to us on *136 these propositions. There is some evidence, however, in the record tending to prove that the machinery was-defective; that appellant, with knowledge of the defect, promised to repair it; that appellee was injured by reason of such defect. We can not say, as a matter of law, under the circumstances disclosed by the evidence, that the inference that the danger was increased by the defect,, and that appellee was free from fault contributing to the injury, was not authorized.
It is true that one employing men to operate machinery where belts are used is not required to determine when they shall be tightened or loosened, or to control any such matters of ordinary adjustment. It is the duty of the master to keep the machinery in a mill of this kind in proper repair and in reasonably safe working order. When the belts become loose and the shifters and pulleys refuse to perform their functions, and the employer is notified of the defects and promises to make the necessary repairs, the fact that the omission to remedy the defects occurred through the fault of another servant charged with the duty, can not relieve the employer.
On the theory on which this case was prosecuted, and which there was some evidence tending to sustain, the duty was owed to appellee directly. When attention was called to the defects, appellant promised to make the repairs. As we have before observed, it is not shown that appellee had ever been charged with this duty, and the jury was authorized to draw the inference that the duty would be performed by appellant, and that appellant was not relying on the men operating the planer to cut and shorten the belts and repair the shifter and pulleys in such manner as to make the machinery perform its functions in the proper way.
In the view we take of the case, this court would not be authorized in saying there was -no evidence authoriz *137 ing the jury to infer negligence on the part of appellant, and that appellee was free from fault.
In Cincinnati, etc., R. W. Co. v. Grames, 136 Ind. 39, Judge Coffey says: ‘ ‘The question of negligence must be submitted to the jury as one of fact, not only where there is room for difference of opinion between reasonable men as to the existence of the facts from which it is proposed to infer negligence, hut also where there is room for such difference as to inferences which might be fairly drawn from conceded facts.” Kentucky and Indiana Bridge Co. v. McKinney, supra.
In this court, such reasonable inferences as the jury might have drawn from the evidence considered in the most favorable light in the interest of appellee will not be disturbed.
The sixth reason for a new trial calls in question the correctness of each of the instructions given by the the court. The second instruction is as follows: “That at the time the plaintiff received the alleged injuries the defendant was a corporation and he in its employ, there does not seem to be serious controversy. Then the question arises, were either the belts, pulleys, machines or other appliances out of repair? Was either in an unsafe, or dangerous or defective condition? Was either one out of repair? Was the place in which he was working at the time of the reception of the injuries dangerous or unsafe? If any of the machinery was defective or out of repair or in a dangerous condition, what was it? Which particular piece was unsafe? What, if anything, was unsafe about the premises-where the plaintiff was laboring? These are questions for you to answer in forming your verdict. Then, again, if you find any part of the machinery was unsafe or any of the appliances dangerous which directly contributed to the injury complained of, was that fact known to the plaintiff? and if so *138 known to him, was it known to the defendant or could it, by the exercise of reasonable care, have known of such condition? These are also questions for you to determine.”
The theory of the complaint is that the machinery, through improper adjustment and long continued use and wear, had become out of repair, and that by reason of such defects it had become unsafe and dangerous. In other words, that the dangers of the service in which appellee was engaged had been increased by reason of such defects arising out of the failure to repair.
The only question to be determined on this branch of the case was whether the unsafe and dangerous condition of the machinery grew out of the alleged defects. Whether the place in which he was working at the time he was injured was unsafe, or whether the machinery was dangerous, was not a question involved in the case except in so far as the unsafety or danger was the result of the defects growing out of the failure to repair the machinery. The instruction suggests to the jury that among the. questions to be considered by them in determining the right of the appellee to recover was whether the place in which he was employed was unsafe or the machinery dangerous. The fact that the place was unsafe or the machinery dangerous did not, under the issues, entitle appellee to recover. There may have been, and perhaps was, more or less danger connected with the service when the machinery was in good working order. The only right of action which appellee could maintain under the circumstances was because of the increased hazards growing out of the defects on account of the failure to keep the machinery in proper repair. Conceding, without deciding, that the other instructions, when considered as an entirety, correctly state the law applicable to the case, we are of the opinion, in *139 view of the unsatisfactory character of the evidence on the vital questions involved in the case, that the instruction under consideration was calculated to mislead the jury, and we are not satisfied that such erroneous impression, if created, was removed from the minds of the jury by the other instructions. City of Lafayette v. Ashby, 8 Ind. App. 214.
Filed Nov. 20, 1894.
On account of the unusual length of this opinion, we will not consider other questions presented which may not arise on another trial.
Judgment reversed, with instructions to grant a new trial.